# SUPREME JUDICIAL COURT

#### FOR THE COUNTY OF

# LINCOLN.

### *MAY TERM,*

### 1826.

## THE INHABITANTS OF ALNA *vs.* PLUMMER.

Where a husband, well able to support his wife, who was insane, neglected to pro-
tect and provide for her ; and she wandered into an adjoining town, where she
received support, the expenses of which were reimbursed in the first instance by
the town where she was relieved, and then repaid by the town of the husband's
settlement and abode ;—it was held that the latter town might recover against
the husband the expenses thus incurred.

The auctioneer, in the sale of real estate, is the agent of both parties, within the
statute of frauds ; and it is not necessary that his authority should be in writing.

And a memorandum of the sale, entered by his clerk, is sufficient, if it be made
in presence of the parties, and of the auctioneer.

Where real estate is sold by auction, and a written memorandum made of the sale
by the auctioneer, and a deed tendered to the purchaser, which he refuses ; the
measure of damages against him is the price at which the land was struck off,
with interest ; although the title remains as before ; the purchaser having his
remedy upon the same contract, should the seller refuse to deliver the deed,
upon a new demand.

THE declaration in this case, which was an action of *assumpsit,*
contained one count for money paid to the town of *Dresden* for the
support of the defendant's wife as a pauper, her legal settle-
ment being in *Alna* ; and another count for the price of a pew
in the meeting house in *Alna* ; alleged to have been sold by auc-
tion to the defendant.

At the trial, which was before *Weston J.* at *September* term 1824, it appeared that the wife of the defendant, being insane, and having wandered from her husband's house in *Alna*, and fallen into distress in *Dresden*, was relieved by the overseers of the poor of the latter town, who gave due notice to the town of *Alna* that she was boarded and relieved in *Dresden* at their expense. The defendant, who was well able to support her, and knew her situation, she being but five miles from his house, neglected to bring her home, and to provide for her support ; and the town of *Alna*, being sued by *Dresden* for the supplies furnished to her, suffered judgment to go by default. The ability of the defendant to support her was well known to the overseers of both towns, and to the person at whose house she was boarded.

Upon these facts, the judge ruled against the plaintiffs' right to recover upon the first count ; deeming the case not to fall within the provisions of the act for the relief of the poor, from the well known ability of the husband to provide for all the exigencies of the case, at the time it happened.

Under the second count it was proved that the land on which the meeting house stood, was conveyed more than thirty years ago to the inhabitants of *Alna*, who built and repaired the meeting house thereon, under votes passed at regular town meetings. In *September* 1821, the town voted to repair the house, and to raise three hundred dollars, by the sale of pews, for that purpose; and appointed a committee to sell the pews, and to solicit subscriptions to the funds. This committee employed a regular auctioneer to make sale of the pews by public auction, which was done. By the conditions of sale, which were reduced to writing by the auctioneer's clerk, at the time of sale, and in open meeting, the purchase money was payable, in equal moieties, at thirty and sixty days from the sale. The defendant was present at the auction, and bid upon a pew which was struck off to him; and the clerk immediately wrote down his name under the conditions of sale, with the number of the pew, and the price at which it was struck off. Each sale was publicly announced by the auctioneer ; but it did not appear that the defendant requested the clerk to make any entry of his name, and the purchase, nor that he knew it was done ; though he was present with the com-

pany, when the entry was made.    On the same day a deed of the pew was tendered to the defendant, which he refused to accept. This deed purported to be a conveyance by the inhabitants of *Alna* ; and concluded thus ;—" In witness whereof *Jeremiah* " *Pearson,  John McLean*, and *Charles Rundlet*, authorized by a " vote of the inhabitants of the said town, at a meeting legally " holden for that purpose *Sept.* 10, 1821, have hereunto set the " seal of said town, and hereunder written their own names, this " ninth day of *October* A. D. 1822." The names of the committee were then subscribed, and one seal affixed.    Afterwards at a town meeting holden *Dec.* 16, 1822, the town voted to confirm the doings of the committee in the sale of the pews, and in the making of deeds to the purchasers.—The authority of the auctioneer, and of his clerk, did not appear to have been in writing.

Upon this evidence the judge instructed the jury that if they were satisfied that the defendant was present, and knew that his name, the number of the pew, and the price he was to give, were entered by the clerk on the memorandum of the conditions of sale, at the time of the sale, they should find for the plaintiffs; and that the measure of damages was the price of the pew, with interest from the time the payments fell due.    And a verdict was returned for the plaintiffs, for the price of the pew, and interest ; which was taken subject to the opinion of the court upon the points ruled at the trial.

At the argument upon these points, which was at *May* term 1825, it was contended by *Orr* and *Child*, for the plaintiffs, that the town of *Dresden* was originally bound to administer relief to the defendant's wife, by the express requirement of the statute for relief of the poor ;—an obligation which it could not avoid. By the same statute, *Dresden* had its remedy over, against *Alna*, the town in which she was legally settled; and this town might seek its indemnity from the husband.    *Stat.* 1821, *ch.* 122, *sec.* 11.    *Paris v. Hiram* 12 *Mass.* 262.    *Hanover v. Turner* 14 *Mass.* 227.    The common law also furnishes a remedy ; for the two towns may be considered as the sureties of the defendant; one of whom advanced the money, which the other replaced, and now seeks to recover against the principal.

Alna *v.* Plummer.

As to the second count ; they maintained that the authority of the auctioneer or of his clerk, need not be in writing ; that the signing was sufficient, being in presence of the defendant ; that the auctioneer was agent for both parties ; and that here the whole contract was reduced to writing.    *Coles v. Trecothick* 9 *Ves.* 250.    *Simon v. Motivos* 3 *Burr.* 191.    1 *Phil. Ev.* [375.] *Merrit v. Clayson* 12 *Johns.* 1.    *Freeport v. Bartol* 3 *Greenl.* 340.

*Stebbins*, on the other side, said that the statute applied only to poor persons; not to the affluent, who might for the moment be absent from their funds, and who are to find relief upon their own credit.    But he denied that the statute gave any remedy in the case.    The woman was in the neighborhood of her home, where her husband and his ability were well known, and it was upon his credit that she originally was relieved and taken care of. The individual who advanced her this aid, had his remedy on the husband.    It was a *private debt*, in which *Dresden* had no right to interfere; much less the plaintiffs.    The payment was wholly officious, and created no new obligation to the party making it. To admit the principle, would lead to endless circuity of action.

Upon the sale of the pew, he cited *Long on sales p.* 41, and remarked that though the auctioneer might be deemed the agent of both parties, yet his clerk was not, unless specially authorized. As a credit of sixty days was given, the deed should have been tendered and payment demanded at the end of that period.    But the paper exhibited, he said, was not the deed of the town, which had no corporate seal ; nor was it the deed of the committee, having the seal of but one of them.

WESTON J. at this term delivered the opinion of the court.

With regard to that part of the plaintiff's claim, which arises from a payment made to the town of *Dresden*, to reimburse them for certain expenses, incurred in the support of the wife of the defendant, it becomes important to determine whether the plaintiffs were under any legal obligation to make this payment.    It appears that the defendant's wife was found out of the town where she had her legal settlement ; that she was in distress ;

and stood in need of relief. It must be afforded from some quarter. No person is left by law to depend upon the precarious support of voluntary charity ; or to suffer for the want of credit, which may sometimes happen to those, especially when absent from their usual residence, who may ultimately be found of sufficient ability to refund expenses, incurred in their behalf. It is made the duty of the overseers of the town, where a person may be found in distress, to Institute an inquiry, not as to any means he may possess, of which he cannot then avail himself; but whether immediate relief is necessary. Were it otherwise, the party might be left to suffer, while the overseers were deliberating as to the extent of their official duty, and the nature of their remedy. The law has not subjected the towns they represent to the necessity of first attempting to enforce their claims against the party himself, before they can call upon the town where he has his settlement ; but, to quicken their diligence, has given a certain and sufficient remedy against such town, in all cases where they are bound to furnish relief. And this obligation is imposed when distress exists, and relief is necessary, for persons found out of the place of their legal settlement. Persons thus circumstanced will generally be paupers, but the statute has not in terms made it necessary that they should be in order to entitle them to the relief prescribed.

This construction is supported by the case of *Paris v. Hiram*, cited in the argument. It is true the court there say, in reference to a party in need of relief, that, " if the distress is of his " own procuring, and may be removed by his own exertions, and " this known to the overseers of the town who provide for him, a " question may arise as to the right of recovery ;" but upon this point they forbear to give an opinion. No question of this kind however can arise in relation to the relief furnished to the defendant's wife. We are upon full, consideration, of opinion that *Dresden* had a claim upon *Alna* for the expenses in question, against which no legal defence could have been made.

But it is contended that a town has no remedy against the individual relieved, except in virtue of the nineteenth section of the act for the relief of the poor, *ch.* 122, which gives an action only

for the support of a pauper; and that it lies not in this case, the party relieved not being a pauper. Had it not been for this provision of the law, it might have been questionable whether supplies furnished to a pauper were not to be deemed gratuitous, and not therefore constituting a sufficient consideration to raise an implied assumpsit on his part to pay for them. But when furnished to a person not a pauper, there can be no doubt but the common law affords a sufficient remedy, without the aid of the statute. The defendant, having neglected his wife in her deranged state of mind, was as liable for her necessary support, as if he had turned her out of doors. In refunding to *Dresden* their expenditures, the plaintiffs were paying his debt. It was not done at his request; but it was not an act of voluntary interference in his concerns; it was an obligation, from which they had no means of escape. Under these circumstances, the law implies an undertaking on his part, founded on the ties of natural justice, to repay to them what they have necessarily expended on his account.

In the case of *Hanover v. Turner* 14 *Mass.* 227, the plaintiffs having relieved the defendant's wife, she being settled in another town, brought their action directly against him. It was contended that the action should have been brought against the town where she had her settlement, and that they had their remedy over against the husband. No doubt appears to have been entertained, that this course might legally have been pursued; but to avoid circuity, the action was sustained. The liability of the defendant in the case before us, is supported by the principles of that case.

We have decided, upon a view of the authorities, in the case of *Cleaves v. Foss*, in the county of *York*, that in sales of real estate at auction, the auctioneer is the agent of both parties; and that his putting down the name of the purchaser, with the price and conditions of sale, was a sufficient signing within the statute of frauds. In the case before us, the memorandum was made by the clerk of the auction; but as this was done in the presence of the auctioneer and of the defendant, and, as the jury have found, with the full knowledge of the ' ... it appears to us to fall

clearly within the principles of that case. The auctioneer virtually made the memorandum by the hand of his clerk. In the case of *Coles v. Trecothic* 9 *Ves.* 234, it was stated that although the auctioneer was authorized to sign for the principal, yet his clerk is not authorized to sell in his absence, without the assent of the principal. But in this case the clerk acted in the presence, and by the virtual direction, of both the auctioneer and the purchaser. It is not necessary that either the auctioneer or clerk should be authorized in writing. *Sugden's law of vendors*, 74, 75, and the cases there cited.

An objection has been made to the sufficiency of the deed ; but we consider it substantially like that which was the subject of consideration, in the case of *Decker v. Freeman* 3 *Greenl.* 338. The authority given to the committee to sell, on the tenth of *Sept.* 1821, virtually included, as necessary to the execution of that power, an authority to convey. On the day of the sale the committee tendered the deed ; and all their doings were confirmed by the town in *December* following. The measure of the damages, was, as the judge instructed the jury, the price agreed to be paid for the pew by the defendant, who will be entitled to the deed, whenever he chooses to accept it. The verdict being amended in conformity with this opinion, judgment is to be rendered thereon.