## INHABITANTS OF THOMASTON *versus* INHABITANTS OF WARREN.

If supplies are furnished, by the overseers of the poor of a town, to a person alleged to be a pauper having a settlement in another town, their opinion or adjudication that the supplies furnished were necessary, although made in good faith, is not conclusive of that fact in a suit to recover the value of such supplies.

Exceptions will not be sustained, on the ground that the presiding Judge erred in declining to give a certain instruction to the jury on request, unless the exceptions show, that the instruction requested was applicable to the case.

If a part of an instruction requested by counsel, upon a particular point at a trial, be correct, and a part erroneous, it is not the duty of the Court to give such part as may be correct, but the whole request may well be declined.

TRIAL before WHITMAN C. J.

Copy of the exceptions.

This was an action brought for aid rendered Isaac Brackly and family, alleged to have had their settlement at the time in Warren.

The general issue was pleaded and joined.

Admissions were made by the parties for the purposes of this trial, in writing, which are referred to.

The overseers of the poor for Thomaston, during the time referred to in the writ, were called, and testified that they furnished the aid named in said writ, and in good faith, to the parties and from a sense of duty as overseers, and not to intercept his gaining a settlement in Thomaston.

Several witnesses were introduced by the defendants, relative to the furnishing of said aid, tending to show that it was not necessary or in good faith; and several witnesses by the plaintiffs, that it was in good faith and necessary.

The Court instructed the jury as per paper hereunto annexed.

The verdict was for the defendants, and the plaintiffs filed exceptions to the rulings of the Court, and to the omission to rule as requested.

The following is a copy of the requests by the plaintiffs for instructions, and of the instructions given.

1. The Court is requested to instruct the jury, that the adjudication of the overseers of the poor, acting in good faith, upon the question of whether aid is necessary, is binding upon the parties.

This was not given.

2. That the jury are not to presume fraud or bad faith on the part of overseers of the poor, but it should be clearly shown.

*Instruction.* May be shown by circumstances, and if satisfied from them of the fraud, they may find it to exist.

3. That it is not necessary that a person in distress should apply for relief as a pauper, it is sufficient that he receives aid and has the benefit of it.

This was not given.

4. That if the jury find the aid was rendered, and in good faith, by the plaintiffs, then so far they are entitled to recover.

*Instruction.* Not unless furnished in a case within the purview of the statute, viz. fallen into distress, and in *immediate* need of relief.

5. That a person owning property enough for his support may still be in need of relief, and if he receives it from the overseers of the poor as such, he is for the time being a pauper within the meaning of the statute.

Given, qualified by the word "immediate" preceding "need."

*E. Wilson,* for the plaintiffs.

Upon the point " that the adjudication of the overseers of the poor, acting in good faith, upon the question of whether aid is necessary, is binding upon the parties," the plaintiffs contend, that the 29th section of c. 32, Revised Statutes, making it the imperative duty of the overseers of the poor, to provide for the immediate comfort and relief of all persons, when they shall fall into distress and stand in need of immediate relief," contemplates that they are to be the judges, whether persons are in need of immediate relief, and thus acting in good faith,

their decision is binding upon the town in which the pauper has a legal settlement, as well as upon that in which they act. Their acts are binding upon their own town, and to allow them the same power relative to other towns, would be giving them equal power, in cases in which, generally, they would have less improper influences, actuating them.   There is no provision made by statute, to ascertain, first, if a person has fallen into distress and stands in need of immediate relief, save by the adjudication of the overseers of the poor of the town where such person lives.   The statute provides for the election of three or more overseers of the poor in each town, who are to be sworn to the faithful discharge of their duty, and directs that they "*shall* also provide for the immediate comfort and relief of all persons," &c.   Why thus imperative for immediate action, unless their acts are of binding effect?   It is a fair construction of the statute that the power to bind, follows the imperative duty and full power to adjudicate upon the question of need of aid.   The statute clearly makes it their duty and gives them the power to thus adjudicate, and makes no provision for appeal; and if they contract for the support of a pauper, the town is holden.   They are elected to have " the care and oversight" over all the poor residing in their town.   The 29th sect. is as imperative in the one case, as the 5th sect. is in the other.   In the one case it is to be done ' at the cost' of their own town, and in the other " the expenses thereof may be sued for and recovered in an action at law, against the town liable therefor."   It is a summary way, wisely provided by statute, that the wants of the poor may be at once supplied. The tendency of not allowing overseers of the poor to bind, by their acts, another town, in case of aid rendered their poor, would be to prevent that timely assistance which justice might require.   If overseers of the poor were to jeopardise the interests of their own town, in aiding the poor of other towns, they might withhold assistance, when they should not.   Overseers of the poor are the best judges of the question of need. Theirs is a personal examination and knowledge — a thousand things are or may be seen, that cannot be well and truly rep-

resented. In this case, the overseers of the poor of Thomaston " testified that they furnished the aid named in the writ in good faith to the parties, and from a sense of duty as overseers ;" and the defendant town should have been barred from going into the question of the necessity of the aid, except upon the ground of fraud. *Poplin* v. *Hawke*, 8 New Hampshire R. 305.

Upon the point, " that it is not necessary that a person in distress should apply for relief as a pauper — it is sufficient, that he receives aid and has the benefit of it," the plaintiffs contend, that the ruling of the Court was wrong — that the statute nowhere makes it necessary, that the suffering party shall apply for relief. The duty of the overseers arises when distress exists and relief is necessary. *Corinna* v. *Exeter*, 13 Maine R. 321.

*E. & S. E. Smith*, for the defendants.

The first request is, that the jury be instructed " that the adjudication of the overseers of the poor, acting in good faith, upon the question whether aid is necessary, is binding upon the parties." That is, that the overseers of the poor of the plaintiff town shall bind the defendant town conclusively upon this question.

This is to establish a tribunal to decide upon defendants' rights, in whose selection they have no voice, who are interested in the result, and from whom there is no appeal, unless it can be shown that they acted in good faith, and this they are permitted to disprove by their own declaration. The mere statement of such a proposition, seems sufficient to negative the conclusion. The question whether aid is necessary, is an important one in this kind of suits ; one which necessarily arises in almost every case of this nature ; and sometimes the only one on which the case turns. It is also so connected with the other questions which arise, whether the individual be a pauper, or whether he be in circumstances which the law requires to exist before he can be supported by one town at the expense of another ; involving questions of law as well as fact ; that it may well be asked, why not carry out the principle

contended for and constitute the same tribunal judges of the questions of settlement, notice and all other questions arising in the case. If established as plaintiffs contend, it would certainly give the overseers of the poor power to make any individual a pauper, whether he were so or not, if upon casual inquiry or in any other way they happen to suppose him destitute.

The third request is, that the Judge should instruct the jury " that it is not necessary that a person in distress should apply for relief as a pauper, it is sufficient that he receives aid and has the benefit of it." This instruction, it is said, was not given.

The doctrine of instructions we take to be as laid down in a late case in Massachusetts by C. J. Shaw, which I extract from Law Reporter, of Feb. 1847. "It is the duty of the Judge to instruct and direct the jury authoritatively, upon such questions of law as may seem to him to be material for the jury to understand and apply, in the issue to be tried. And he may also be required so to instruct upon any pertinent question of law within the issue, upon which either party may request him to instruct." It follows, then, that the Court may refuse to comply with a request to instruct for either of two reasons : — 1st, that the instruction requested is not law ; 2d, that it is not pertinent to the issue. And we contend that upon either of these grounds the Court might have refused to give the instruction named in the third request. We contend the law to be that, in ordinary cases, the overseers of the poor should wait until application is made to them by the pauper, before proceeding to render him assistance. Nor does the case of Corinna v. Exeter, 13 Maine R., militate against this view. There the person was sick, in a situation which rendered the application impossible ; the head of the family was absent, and the family in extreme and urgent need of assistance before his return.

The overseers of the poor are not required nor do they in fact, keep themselves on the alert, to see what citizens or strangers are in their town, in circumstances requiring imme-

diate relief. If any one be in such circumstances, it is usual for him directly or indirectly to make application. Extraordinary instances, indeed, like the one already referred to, (13 vol. Maine Rep.) where the application is impossible, may be exceptions. And it is true that in that case the Court use language which is general in terms and would seem to include every case of the kind. But in construing their meaning regard must be had to the point before them for decision, which was, whether in that instance an application was necessary.

But it is apprehended the Court will hardly be called to take this view of the case, if, as we contend, the instruction requested was totally inapplicable to the case. We have cited the decision of C. J. Shaw, in support of the position that the Court might well refuse to instruct the jury in a matter not pertinent to the issue, i. e. not the issue presented by the pleading alone, but by the pleadings in connection with the evidence.

The general issue was pleaded and joined, but it can hardly be said that the Court would therefore be bound to instruct the jury upon the numberless principles involved in that issue, unless presented by the proof. The issues presented in this case at the trial, appear to have been, whether the overseers acted in good faith and whether aid was necessary. No other questions were raised so far as can be judged from the exceptions.

It does not appear that any testimony was offered on the one side to prove, or on the other to disprove, an application made to the overseers by the alleged pauper; or that it was a material point on which the jury were called to pass. So far as appears, it was totally irrelevant. Had such a question been raised at the trial, it should have been set forth in the exceptions with the testimony applicable, as a foundation for the request, so that the Court, having all the facts before them, might judge of the relevancy or applicability of the proposed instruction; for in this way only, can they decide upon the reasonableness of the request.

It has been decided more than once, that the Court have no power to go out of the bill of exceptions for facts on which to base their judgment.   11 Maine R. 353.   And certainly plaintiffs wishing to set aside a verdict 'ought to furnish, and must be supposed to have furnished every thing making for them which could in any way affect the decision of the case.   23 Maine R. 210.

For every thing that appears here the requested instruction was totally inapplicable, and the Court can hardly be held in the wrong for omitting to lay down a principle which, if true, had no applicability, and burden the minds of the jury with that which could not enter as an element into the decision of the case.   10 Maine R. 224 ;   11 Maine R. 353.

But again, supposing it to be true that the first part of the 3d request is founded in correct legal principles, and that application need not be made by the pauper ; it is equally certain that the latter part of the same is not law.   It cannot be contended that " it is sufficient that he receives aid and has the benefit of it."   Many other things are necessary.   The Court therefore could not have given the desired instruction as a whole, a part of it being manifestly contrary to law.   Nor is it conceived to be their duty to separate the two parts, more especially when the latter part being the affirmative part of the request, seems to be that more especially intended by counsel to be insisted upon at the trial.

Moreover, we contend that in the Judge's charge under the 4th request is virtually embraced all that could be consistently given, even under the views of the plaintiffs' counsel.

The opinion of the Court was drawn up by

TENNEY J. — In the trial of this action, which was to recover the value of aid furnished to certain persons as paupers, alleged to have their settlement in the town of Warren, the Judge was requested to instruct the jury,— 1st. That the adjudication of the overseers of the poor of Thomaston, acting in good faith, upon the question, *whether aid was necessary,* is binding upon the parties.   2d. That it is not necessary, that

a person in distress, should apply for relief as a pauper, it is sufficient if he receives aid, and has the benefit of it. Under another request, that the Judge would instruct the jury, if they found the aid was rendered, and in good faith, by the plaintiffs, then so far they are entitled to recover, he remarked to the jury, " not unless furnished in a case within the purview of the statute, viz : — fallen into distress and in immediate need of relief." Exceptions were taken to the refusal to instruct, according to the first and second requests; and also on other grounds, which were not relied upon at the argument, and it is unnecessary to consider them.

1. The plaintiffs found their claim upon the Rev. Stat. c. 32, sect. 29, which provides that overseers in their respective towns, shall provide for the immediate comfort and relief of all persons, residing or found therein, not belonging thereto, but having lawful settlements in other towns, when they shall fall into distress, and stand in need of immediate relief ; the expenses whereof, incurred within three months, next before written notice, given to the town to be charged, may be sued for, and recovered by the town incurring the same, and against the town which is liable therefor in an action at law. It is insisted for the plaintiffs, that when their overseers furnished the relief to the paupers, having their settlement in Warren, in good faith, it was an adjudication by them of the existence of the necessity, which required them to act, and to supply their wants, and that this judgment is conclusive upon the parties.

In a case, where relief is given, by the overseers of one town to a person · having his lawful settlement in another, and the facts justify and require it under the statute referred to, the consequences are important both to the pauper and to the town of his settlement. He may be deprived of some of his rights as a citizen. He loses the right of suffrage ; and a residence in a town, unless it has continued for five years before the relief is given, is so far interrupted, that it constitutes no part of the time necessary to gain a settlement therein. And this result may be brought about, when the poor person had

no opportunity of being heard upon matters, which so essentially affect him, for it is not always necessary that he should know that his wants are relieved at the expense of the town. The town in which the lawful settlement of the pauper is established, is eventually liable for expenses properly incurred by the town where he is found ; and has no means provided by law, which will enable it to object to the expenses, prior to the time, when the aid is given. Such effects, we cannot presume, were intended by the authors of the statutes, unless upon a fair construction, such a design is manifest, to result from the acts of the overseers alone.

The overseers of the poor have a power, as officers of the towns, which elect them, to take charge of the poor, who are chargeable to their respective towns, in their discretion, at the cost of the towns. Rev. Stat. c. 32, sect. 5. But the language in the 29th section is different. Under the latter section, the overseers act as the agents of their respective towns, and the towns are to be the parties to actions brought for the reimbursement of expenses incurred against those, where is the settlement of the paupers; and if the overseers conduct with good faith, and do not go beyond the scope of their authority, their acts are those of their towns. But they cannot be regarded as the officers or agents of other towns, in which persons aided by them have their lawful settlement; and the clearest and most unequivocal language would be necessary to satisfy the mind, that, in a suit in favor of a town for supplies, alleged to be so furnished, it was intended that the overseers thereof, interested in the event of that suit, should be a tribunal, whose judgment, rendered without notice, should be conclusive upon the other party. But the statute will not admit of the construction contended for. In furnishing aid to a pauper, having his settlement elsewhere, the overseers like all other town officers, act as such, and if therein, they conduct honestly, their towns are bound ; but it was never intended, upon a fair construction of the law, that they became a judicial tribunal, whose acts should have the authority of judgments. The liability of

VOL. x.          38

the town sought to be charged, is not to depend, according to the terms of the statute, upon the opinion of the overseers, however correct it may be, or however honestly entertained, that the relief was furnished to a proper subject, but upon the *fact*, that the person provided for, had fallen into distress and stood in need of immediate relief.

It is believed, that under similar provisions in Massachusetts, and this State, in practice, it has always been regarded competent for defendant towns to deny the necessity of the supplies, which were alleged to have been furnished by those, which brought suits to recover compensation therefor. *Brighton* v. *Corinna*, 13 Maine R. 321.

The Rev. Stat. c. 32, § 35, which was repealed by act of Aug. 1846, provided another mode, by which among other objects, the town, which had relieved a poor person of another town, in his distress, might obtain the value of the supplies furnished, and this is by complaint to a justice of the peace, or to the District Court; and upon a trial the justice or Court was authorized to determine the expenses incurred by the town making the complaint, if the other party was found liable. It cannot be admitted, that the overseers of the town, which commenced a suit at law, for such expenses, were the conclusive judges of the necessity, when they were clothed with no such power, if resort was had to a complaint, when that mode was open to them.

2. If there were facts in evidence, which would have been the foundation of the instruction called for in the second request, the refusal of the Judge might have been erroneous, so far as regards the first clause, standing detached from that which follows. But unless there was no evidence, that an application was made by the pauper to the overseers, or unless there was involved in the trial a question whether such application were made or not, no occasion presented itself for such instruction ; and the Court are not required to give instruction upon a state of evidence not exhibited. Before the plaintiffs can claim to have their exceptions sustained on this ground, the case must show so much of the evidence, as to satisfy the

Thomaston *v.* Warren.

Court, that the instruction was properly demanded. It not appearing, that such a point could result from the evidence adduced, the refusal cannot be regarded as incorrect. If however the case did exhibit evidence directly showing that such a question of fact might have been presented to the jury, the refusal cannot be considered as erroneous, when the whole request is taken together. The request implies, that the counsel for the plaintiffs contended for the proposition, that all, which was necessary to entitle them to recover, was proof that aid was given by them to the pauper, having his settlement in Warren, and that the pauper *being in distress, received* the benefit thereof. If all the facts implied by this proposition were established, *they would not render the defendants liable*, inasmuch as they all may be true, and the pauper might not have stood in need of *immediate relief*, which is essential to a right of recovery of damages. And the jury could not have mistaken the meaning of the Judge, for he remarked under the next request for instruction, that, it was necessary for the maintenance of the action, that the necessity should be such as to call for "immediate relief."                *Exceptions overruled.*