INHABITANTS OF CORINTH *versus* INHABITANTS OF BRADLEY.

Persons, *non compos mentis* may acquire a settlement in their own right by a five years' residence.

A person *non compos mentis*, not residing with his father, nor supported by him, does not follow a new settlement acquired by his father, after the son is twenty-one years old.

The residence of a person in a town is not changed by an absence for a temporary purpose only, if he has sufficient intelligence to form and retain the intention of leaving for a temporary purpose and of returning, and does return, in accordance with such intention.

ON EXCEPTIONS to the ruling of APPLETON, C. J.

ASSUMPSIT for supplies furnished one Alexander Rowell.

The evidence tended to show that Bradley was incorporated in 1834, and that Rowell's father then resided there; that the pauper was then over thirty years old, and *non compos mentis;* that he did not then reside in either Corinth or Bradley; that he was not supported by his father; that he went to Corinth twenty or thirty years ago, where he labored for various individuals for his board and clothes; that he frequently left the town and labored in other towns, on the same terms, for a month, months, or a year, but always returning to Corinth.

The pauper was a witness with reference to these facts, and as to his intentions when he left Corinth at the different times specified.

The presiding Judge instructed the jury, that Rowell could gain a settlement in the plaintiff town by having his home and residing for five successive years therein, not re-

ceiving supplies directly nor indirectly during that time; that, to constitute five years' residence it was not necessary that he should be there bodily all that time; that, if he left for a temporary purpose only, and with the intention of returning and had sufficient intelligence to form and retain the intention of leaving for such temporary purpose and of returning, and did so return, such temporary absence would not prevent his gaining a settlement.

The verdict was for the defendants, and the plaintiffs excepted.

*Hilliard & Flagg* and *McCrillis*, for the plaintiffs, submitted an elaborate argument in support of the following propositions:—

I. That a person *non compos mentis* is, in all cases, incapable of gaining a settlement for himself; but has the settlement of his father, whether he lives in his father's family or not, or whether he is supported by his father or not.

II. That he cannot gain a settlement by *residence*, because, in order to have a residence, he must have an *intention* of residing, and proof that a person is *non compos mentis* disproves any such intention.

III. That, if he can, in any case, gain a settlement by five years' continuous residence, he must be bodily present in the town for the whole of that time, because, when he goes away, he can have no *intention of returning*.

*J. A. Peters*, for defendants.

The opinion of the Court was drawn up by

BARROWS, J.—It has been repeatedly decided, in this State, that persons absolutely *non compos mentis* may acquire a settlement in their own right by a five years' residence, that is to say, according to rule VI, § 1, c. 24, R. S., 1857, and corresponding provisions in previous enactments. *Augusta* v. *Turner*, 24 Maine, 112; *New Vineyard* v. *Harpswell*, 33 Maine, 193; *Gardiner* v. *Farmingdale*, 45 Maine, 537; *Auburn* v. *Hebron*, 48 Maine, 332.

No sufficient reason is perceived for departing from these decisions, or for so refining upon them as to make them difficult and uncertain in their application by common minds, or so as to open the way for much manœuvering and innumerable conflicts of testimony as to petty details in these questions of settlement. The decisions are intelligible as they stand, and afford a convenient rule for determining the questions that may arise. It may, not unfrequently, be easy to ascertain what town has been the home of any given individual for the space of five years continuously, when it would be difficult, if not impossible, satisfactorily to determine whether the person had been bodily present in such town every day or hour of the period.

Another class of cases, like *Wiscasset* v. *Waldoborough,* 3 Maine, 388, and *Tremont* v. *Mt. Desert,* 36 Maine, 390, decide that a person *non compos mentis,* who continues to reside with, and be dependent upon his father, after he arrives at the age of 21 years, is not thereby emancipated; and it may be well enough, on the principle of humanity, so strenuously contended for by the plaintiffs' counsel here, to hold that where mutual care and dependence indicate that the ties of nature are warmly regarded, parties thus nearly related shall not be subjected to separate settlements. But the widest range in the realms of sentiment or imagination would fail to detect, in the circumstances of this case, any reason to suppose that the condition of this pauper or his friends would be in the least ameliorated by fixing his settlement in the same town with a father from whose control and care he had been so long emancipated and turned adrift.

When the father of the pauper acquired a settlement in the defendant town, in 1834, the pauper was more than thirty years of age, a resident of another town, not supported directly or indirectly by his father, and whether *non compos* or not, had long been free from parental control, and his settlement could in no way depend upon that of his father then gained.

Inhabitants of Corinth *v.* Inhabitants of Bradley.

The instructions in this case, so far as the plaintiffs' rights were affected by them, were carefully guarded, and they certainly furnish *the plaintiffs* with no rightful cause of exception.

The pauper was a witness in the case. The jury could judge of his capacity, and, to a certain extent, the instructions required them to do so, and they appear to have found, under those instructions, that he has had his home and residence in the plaintiff town for twenty-five or thirty years last past, laboring there for such compensation as he could get, and, when temporarily absent, always retaining the intention, subsequently uniformly executed, to return there as his permanent home and abiding place.

It is perhaps seldom that the unfortunate subjects of this class of suits are possessed of intellectual abilities of the highest order, but the mental power of Socrates could hardly have enabled him to gain a settlement under our pauper laws more effectually. *Exceptions overruled.*

APPLETON, C. J., CUTTING, KENT and WALTON, JJ., concurred.

KENT, J.—I concur in the opinion. The presiding Judge did not rule, as the plaintiffs' counsel in his ingenious argument seems to assume that he did,—that an insane or *non compos* person, who was incapable of forming an intention by reason of mental alienation or imbecility, could retain a home, when absent by reason of an intention to return. But he did say, in substance, that if the pauper had sufficient intelligence to form and retain the intention of leaving and returning, and did so return, such temporary absence would not prevent his gaining a settlement.

There are degrees in insanity and in mental imbecility. In this case, the jury could not answer the question whether the pauper was or not, *non compos.* But they did find, under the instructions, that he had sufficient intelligence to form an intention, and that he did form such an intention. The instruction, thus guarded, was correct, and does not involve the broad proposition stated by the counsel.