INHABITANTS OF NAPLES vs. INHABITANTS OF RAYMOND.

Cumberland. Opinion April 20, 1881.

*R. S., c. 143, § 20. Stat. 1874, c. 256, § 7. Pauper supplies.*
*Support in insane hospital. Exceptions.*

The expenses incurred by a town in committing a pauper to the Insane Hopital and supporting him there cannot be recovered of the town in which he has a settlement, under R. S., c. 143, § 20, when there is no proof that the selectmen in making the commitment, had before them the evidence and certificate of at least two respectable physicians, based upon due inquiry and a personal examination of the person to whom insanity is imputed, as required by stat. 1874, c. 256, § 7.

It is no just ground of exception that the presiding judge did not see fit to adopt the form of an instruction requested when full and correct instructions upon the law of the case are given.

ON EXCEPTIONS from superior court, Cumberland; and motion for new trial.

An action of the case to recover the expenses incurred to relieve Charles Gammon who fell into distress in the plaintiff town, amounting to twenty-one dollars and seventy-five cents, and for further expenses incurred in committing the same person to the insane hospital, and supporting him therein.

At the trial there was no proof that the selectmen of the plaintiff town, in committing Gammon to the hospital, had before them the evidence and certificate of at least two respectable physicians as required by stat. 1874, c. 256, § 7.

The verdict was for $89.31.

The following are the requested instructions referred to in the opinion:

"That the burden is upon the plaintiffs to satisfy the jury that Gammon when he left Raymond and went to Saccarappa, had an intention to return to Raymond as his home, and that this intention was not changed at any time while absent."

"That as bearing upon the question as to his intention to remove from Raymond, and while absent in Saccarappa, the jury may properly consider the disposition of his wife not to live in Raymond; the pecuniary difficulties under which he was

laboring as shown by the evidence, and the uncertainty as to his earning money sufficient to meet the mortgage debt on his farm, as well as his statement, if defendants' witnesses are believed, when moving his furniture. and paying his tax to the collector of Raymond, and the fact, if found to be true, that he offered his farm for sale."

*Strout and Holmes*, for the plaintiffs, cited : *No. Yarmouth* v. *W. Gardiner*, 58 Maine, 207 ; *Bowdoinham* v. *Phipsburg*, 63 Maine, 497 ; *Ripley* v. *Hebron*, 60 Maine, 379 ; *Warren* v. *Thomaston*, 43 Maine, 406 ; *Brewer* v. *Linnaeus*, 36 Maine, 428 ; *Jay* v. *Carthage*, 48 Maine, 353.

*Charles F. Libby*, for the defendants.

The requested instruction as to the burden of proof, should have been given.

In *Ripley* v. *Hebron*, 60 Maine, 395, the court say : "The party setting up the five years' continuous residence, is bound to prove it. This is undoubted. If, whilst attempting to prove it, a break in the actual residence is shown, it is for that party to establish such a state of facts as shows that the legal home remained there, notwithstanding the absence. In other words, the party is bound to make out his case, and if obstacles intervene, he is the one to remove them. The other party is not bound to prove a negative, or to show that an actual removal was no removal at all."

The requested instruction was pertinent to the facts of the case, and the principle of law therein presented was not covered by any instruction of the court. In a case of conflicting testimony the burden of proof is an important consideration, and often turns the scale in favor of the defendant. In this case the burden was upon the plaintiffs to show that the presumption naturally arising on two occasions from the acts of removal from Raymond was not the correct one.

He was leaving his home in fact, and there was no presumption of law that he intended to return. The natural presumption was that he did not intend to retain his home in a place which he was in fact leaving, and to which he did not return on either occasion for more than a year.

And with such a ruling, the defendants might have expected a verdict in their favor, in view of the indecision of the jury, which had existed for seven hours, and which was only overcome by reading to them the charge and opinion in *Com.* v. *Tuey*, 8 Cush. p. 2, a case which, however accurate in its statements of abstract law, is always understood by a jury as laying down the rule that the minority should yield to the views of a majority of the panel, and bring in a verdict accordingly. When such pressure as this is necessary to compel a verdict, we think the defendants may justly complain of any failure to give proper instructions, such as were requested in this case.

The burden of proof never changes; it rested upon the plaintiffs throughout this case. See *State* v. *Flye*, 26 Maine, 318; *Tarbox* v. *Eastern Steamboat Co.* 50 Maine, 345.

As to so much of the case as related to expenses of committal to, and support in insane hospital, counsel cited: stat. 1874, c. 256; R. S., c. 143, § § 12–20; *Bangor* v. *Fairfield*, 46 Maine, 558.

BARROWS, J. The circumstances which attended the outgoings and incomings of Charles Gammon at Raymond for nine successive years, and the fact that he had an interest all that time in a homestead there, sufficiently corroborate the testimony which he gives that when he left there on the occasions upon which the defendants rely, it was to procure the means to redeem that homestead, and always with the intention of returning thither as his home. All the points that are necessary to sustain the verdict for plaintiffs for supplies furnished to Gammon as a pauper, having his legal settlement in the defendant town, are made out by an amount of testimony which forbids us to regard the case as one in which the verdict for such supplies may properly be set aside as against law and evidence or the weight of evidence. The testimony indicates that when the overseers of Naples intervened he was getting his living by working out at day's works, and had neither available means, credit, nor friends who were willing to do what was needful to keep him and his family from suffering, so that recourse to public charity was necessary for his relief.

The right to recover for the sums paid by the plaintiff town for Gammon's support in the insane hospital, was made by the rulings to depend upon the proof offered to show a substantial compliance with the statute requirements touching the commitment of insane persons to the hospital by the municipal officers of the town where they are found, and not upon any finding by the jury that such expenditures were necessary, suitable, and proper as pauper supplies under all the circumstances of the case. To this last inquiry the attention of the jury was not called; and the question whether in any case such supplies furnished to an insane pauper would be recoverable except where there has been such substantial conformity to statute requirements as would give a right of action under R. S., c. 143, § 20, is not raised. To sustain the verdict for any part of the sum paid by the plaintiff town for Gammon's support in the hospital, or the expense of his commitment, the proof must be such as will establish the defendants' liability under the last named section as modified by § 7, c. 256, laws of 1874. Under the provisions of R. S., c. 143, § § 18 and 20, the town from which a person is legally committed to the insane hospital may recover the expense incurred from the town in which he has his legal settlement, provided the requisite notice is given. *Jay* v. *Carthage,* 48 Maine, 353; *Bangor* v. *Fairfield,* 46 Maine, 558.

No record of the proceedings of the selectmen of Naples in making the commitment in the present case, is produced, and none can now be found. Not even the petition of the pauper's father upon which the proceedings were based has been preserved, and the evidence as to its contents is of the vaguest character. Nothing in the shape of documentary evidence touching the commitment is forthcoming, except the certificates deposited at the insane hospital. And there is no proof that the record of their doings in the premises which is called for by R. S., c. 143, § 12, was ever made by the selectmen.

Defendants' counsel claim that the failure to observe the directions in the statute, in this respect, should preclude the plaintiff town from recovering against the defendants. It is not necessary to determine whether where it can be shown that the proceedings

were regular, and the commitment legal, the want of a proper record would have that effect. We think there was a fatal defect in the proceedings in the present case. In § 7, c. 256, laws of 1874, we find the following provision :

"In all cases of preliminary proceedings for the commitment of any person to the hospital, the evidence and certificate of at least two respectable physicians, based upon due inquiry and personal examination of the person to whom insanity is imputed, shall be required to establish the fact of insanity."

It is manifest that this requirement was never fulfilled. The selectmen never had the evidence of the physicians before them, and no physician's certificate was made until after their adjudication and order of commitment.

The second order of commitment, the time of making which does not appear, was not based upon any hearing of evidence from the physicians, which, as well as their certificate is made by the statute indispensable. None of the expenses of the commitment to the hospital, or the sums there paid for support are recoverable by virtue of these proceedings. The verdict cannot be sustained for any sum exceeding twenty-one dollars seventy-five cents, and interest thereon from the date of the writ, that being the amount expended before Gammon was sent to the hospital.

If the plaintiffs remit the excess, the verdict cannot be said to be against law or evidence.

Defendants' counsel claims that there is no count in the writ which covers the items proved, basing this claim upon the proposition that all the expenses were incurred on account of the insanity of Gammon. But a pauper may be both insane and dangerous, and his commitment to the hospital may be necessary for the safety of himself and his family, and it is quite possible that it may be the most economical and suitable method of affording support, so that the town where he has his settlement would have no cause to complain of a verdict against them for such expenditures, simply as suitable and proper pauper supplies ; but, as before remarked, the jury were not directed to determine how this was in the present case, the allowance being predicated upon an instruction that the second certificate of commitment was legal

and based upon a legal examination, a ruling which cannot be sustained. We must not be understood as deciding here and now that under a count for pauper supplies only, the expense of committing a pauper to the insane hospital and maintaining him there, is recoverable; for no such question arises in the case as it stands on the record and as it was committed to the jury. But, manifestly, the defect in the declaration, if any, is in the failure to set out the proceedings as to the commitment and support of the pauper at the hospital, so as to show a right of action under R. S., c. 143, § 20, which might lead to a question whether upon any testimony any of the hospital expenses were recoverable. The count is in the ordinary form for pauper supplies and evidence was adduced to show that they were necessary.

The objection raised by the defendants, indicates a misapprehension of the meaning of the provision in R. S., c. 143, § 20, which is relied upon to sustain it.

It does not follow from that provision that no insane person can be a pauper, nor even that pauperism may not result from insanity as it does sometimes from other diseases and misfortunes. The design of the provision is to prevent any one from incurring pauper disabilities or being deemed a pauper from the naked fact that he is thus supported in the hospital upon a commitment by the selectmen. That is a calamity which might befall one who was in no sense destitute or in need of relief from public charity. That an insane person may also be a pauper, or a pauper become so insane that his comfort and safety and that of others interested may be promoted by sending him to the insane hospital, are obvious facts which were recognized by the court in *Jay* v. *Carthage*, 48 Maine, 353; *Same* v. *Same*, 53 Maine, 129, 130.

It remains for us to determine whether the omission to give the requested instructions affords the defendants any just cause of complaint. The obvious aim of the requests was to secure a rehearsal by the court of the various points in the evidence, upon which the defendants relied to prevent the jury from coming to the conclusion that Gammon had gained a settlement in Raymond by having his home in that town for five successive years.

The exceptions do not assert that the presiding judge did not properly instruct the jury that the burden of proof was upon the

plaintiffs to establish the fact that he had his settlement in the defendant town. In the absence of a direct statement that he did not so instruct, the presumption is that he did. But besides the presumption it appears affirmatively that he did instruct the jury that "it is necessary for the town bringing the action, and upon whom the burden of proof rests, to establish four propositions," one of which as stated by the judge is : "4, that the pauper had his settlement in the defendant town." Coupling this with the full and careful instructions which are recited in the exceptions as to what will give a settlement and as to what constitutes a home, and an abandonment of a home, and as to the effect of leaving one's place of residence without an intention to return, and of abandoning a previously existing intention to return while absent, it is plain that the presiding judge gave the jury all the legal propositions necessary for the proper consideration of the case, and told them with sufficient explicitness that the burden of proof was on the plaintiffs. It is no just cause of exception that he did not adopt a form of speech which would probably have sounded like a reiteration of the argument for the defendants. Doubtless the defendants' counsel had laid before the jury with his wonted clearness and precision, the circumstances relating to Gammon's absences from Raymond, and his intentions when he left and while he was away ; but he cannot properly complain because the judge was not disposed to supplement his argument by committing to the jury for their special consideration the terse and compact statement of the testimony favorable to defendants' views which was embodied in the request.

*If plaintiffs remit so much of the verdict as is in excess of $21.75, and interest from date of writ to rendition of verdict, there will be no substantial reason why the entry should not be,*

*Motion and exceptions overruled.*

APPLETON, C. J., WALTON, VIRGIN and LIBBEY, JJ., concurred.