INHABITANTS OF TOWN OF BETHEL

*vs.*

INHABITANTS OF TOWN OF HANOVER

Oxford.    Opinion, November 17, 1955.

*Henry G. Hastings,* for plaintiff.

*Theodore Gonya,* for defendant.

*George C. West, Asst. Atty. Gen.,* for intervenor.

SITTING: FELLOWS, C. J., WILLIAMSON, WEBBER, BELIVEAU, TAPLEY, JJ. CLARKE, J., did not sit.

WILLIAMSON, J. This is an action by the Town of Bethel against the Town of Hanover to recover for pauper supplies furnished to Roger W. Brown and his family for the period August 25, 1949 to September 16, 1950. The referee to whom the cause was submitted found for the plaintiff town in the amount of $594.57. The case is before us on exceptions to the acceptance of the referee's report. The exceptions are overruled.

The issues are, (1) whether the legal settlement was in Hanover, (2) whether the recipients of assistance were "destitute" within the meaning of the statute, (3) whether the assistance rendered constituted "pauper supplies" in light of Brown's mentality, and (4) whether the Board of Overseers of the plaintiff town unlawfully delegated their duties.

The thirteen exceptions are, as is usual, a restatement of the written objections filed in the Superior Court. We may dispose of five exceptions at the outset. The fourth and fifth exceptions were abandoned. In the first and second exceptions the defendant states that the report is against the law, the evidence and the weight of the evidence. These are the words of a general motion for a new trial. Such objections to a referee's report have no weight. A referee's report

stands if it is based on any evidence of probative value. *Staples* v. *Littlefield*, 132 Me. 91, 167 A. 171 (1933). The grounds of objection must be specific and not general. *Throumoulos* v. *Bank of Biddeford*, 132 Me. 232, 169 A. 307 (1933); *Dubie* v. *Branz*, 146 Me. 455, 73 A. (2nd) 217 (1950); *Bickford* v. *Bragdon*, 149 Me. 324, 102 A. (2nd) 412 (1953). The very point of the first and second exceptions was decided in *Water District* v. *Me. Turnpike Authority*, 145 Me. 35, 38, 71 A. (2nd) 520 (1950). In the thirteenth exception it is charged that the referee erred in all of his conclusions of fact in ignoring and failing to give consideration to the rule that the burden of proof falls upon the plaintiff to establish by preponderance of evidence all of the facts essential to recovery. This exception is far too broad and raises no issue before us. It is contrary to the rules above stated. We therefore do not consider these exceptions. See "Some Suggestions on Taking a Case to the Law Court" by Chief Justice Merrill, 40 Maine State Bar Association 175, 198 (1951).

The pertinent statutory provisions are found in R. S., c. 82 (1944), now R. S., c. 94 (1954), as follows:

> "Sec. 1, VI. A person of age having his home in a town for 5 successive years without receiving supplies as a pauper, directly or indirectly, has a settlement therein.

> "Sec. 2. To constitute pauper supplies, they must be applied for in case of adult persons of sound mind by such persons themselves or by some person by them duly authorized; or such supplies must be received by such persons or by some person authorized by them with a full knowledge that they are such supplies; . . .

> "Sec. 28. Overseers shall relieve persons destitute, found in their towns and having no settlement therein, . . ."

Under the "any evidence" rule the referee was fully justified in finding the following facts. It is unnecessary that we review the record in detail.

Roger W. Brown on becoming of age in 1932 had the capacity to acquire a settlement in his own right. In December 1936 Brown with his wife lived with his wife's family in Bethel. In the course of a family dispute Brown with his family moved from Bethel to Hanover in June 1940, and until June 1946 maintained a home at various places in Hanover. In June 1946 Brown with his family moved to Bethel.

Brown received no pauper supplies from any source within the state during the six year period in which he resided in Hanover. A contention by the defendant town that aid received from Hanover in 1942 and 1943 while Brown and his family were quarantined interrupted the five year period necessary for the acquisition of a new settlement was abandoned by the defendant. R. S., Chap. 22, Sec. 49 (1944), now R. S., Chap. 25, Sec. 61 (1954).

Between August 25, 1949 and September 16, 1950 the Town of Bethel furnished the supplies or assistance for which the action was brought for Roger W. Brown and his family consisting of his wife and nine children. There is no dispute about the amount of charges or that the supplies were of a proper type to be furnished for pauper relief. Brown was a person of little, if any, education and of low mentality. Brown, to use the words of the referee, "had sufficient mentality to understand and realize that he was making application for pauper supplies and was receiving them with full knowledge that they were such supplies." At the outset of the giving of the relief, a grocer who had been furnishing supplies to Brown on credit, first called on an overseer of the poor of the Town of Bethel. There was some conflict in the testimony of the grocer and the overseer whether the overseer placed a limit on the supplies or told

the grocer to use his own judgment. From January 1, 1950 it is not disputed that the supplies were furnished on the order of the overseer. The referee stated in his report, "the conclusion that the Overseers did not delegate their authority to . . . (the grocer)."

## 1. Legal Settlement — Exceptions 3, 10, 11, 12

Did Brown and his family have a legal settlement in Hanover when the assistance was rendered by Bethel? The defendant contended that no settlement had been acquired because (a) the evidence failed to show that Brown went to Hanover in 1940 with an intention to make his home there indefinitely, and (b) Brown did not have sufficient mental capacity to form and entertain an intention relative to residence or domicile. The exceptions are substantially that there was no evidence in the case to warrant the finding of a settlement in Hanover.

There is no dispute about the applicable principles of law. To establish a legal settlement "there must have been personal presence in that town, and also an intent to remain, continued for five consecutive years, without his receiving public aid, and without being absent during such five years with an intent not to return." *Gouldsboro* v. *Sullivan*, 132 Me. 342, 347, 170 A. 900 (1934) ; *Madison* v. *Fairfield*, 132 Me. 182, 168 A. 782 (1933) ; *Inh. of Ellsworth* v. *Inh. of Bar Harbor*, 122 Me. 356, 120 A. 50 (1923). See also *Inhab. of Moscow* v. *Inhab. of Solon*, 136 Me. 220, 7 A. (2nd) 729 (1939).

The rule upon capacity to acquire a settlement is set forth in the following instruction approved by Chief Justice Peters in *Fayette* v. *Chesterville*, 77 Me. 28 (1885), at p. 32:

> "The judge submitted to the jury this test: 'To find that a person has capacity to acquire a settlement, within the meaning of the statute, you must find in the first place, that he had intelligence

enough to form and retain an intention with respect to his dwelling-place; that he had a mind sound enough to give him will and volition of his own, and such power and control over his mind and his action as to enable him to choose a home for himself; that he must have mental capacity sufficient to act with some degree of intelligence and some intelligent understanding with respect to the choice of his dwelling-place, and to form some rational judgment in relation to it.' "

See also *Inh. of Corinth* v. *Inh. of Bradley,* 51 Me. 540 (1863).

There is much evidence in the case of Brown's intention to make Hanover his home during the period from 1940 to 1946. Indeed, we find nothing to indicate otherwise. On the question of capacity, there is substantial evidence that Brown lacked intelligence. This, however, is not to say that he lacked sufficient mental capacity to change his home from Bethel to Hanover. There is sufficient evidence in the record under the "any evidence" rule to sustain the finding and conclusion. Furthermore, the referee had the advantage not given to us of measuring Brown as he appeared on the witness stand. The referee was satisfied of the intent and the mental capacity. Both were facts to be determined by the fact finder; and there this issue ends.

## 2. Destitution—Exceptions 6 and 7

The second issue is whether Brown and his family were "destitute" within the meaning of Section 28, *supra*. The defendant town in the exceptions contends that the referee erred in fact and in law and that there was no evidence to support his finding.

The meaning of "destitute" under the statute was well expressed in *Inh. of Mt. Desert* v. *Inh. of Bluehill,* 118 Me. 293, 108 A. 73 (1919) at p. 295:

"The persons alleged to be paupers must have fallen into distress and stood in need of immediate

> relief, and it must appear that the supplies furnished were necessary for their maintenance and support. Bangor v. Hampden, 41 Maine, 484; Corinna v. Exeter, 13 Maine, 321."

See also *Norridgewock* v. *Solon*, 49 Me. 385 (1862) ; *Alna* v. *Plummer*, 4 Me. 258 (1826) ; *Clinton* v. *Benton*, 49 Me. 550 (1862) ; *Naples* v. *Raymond*, 72 Me. 213 (1881). The liability of the town of settlement rests upon the fact of destitution and not upon the opinion of the overseers of the town. *Thomaston* v. *Warren*, 28 Me. 289 (1848).

On the weight to be given the decision of the overseers in extending relief, our court said in *Inhabs. of Machias* v. *Inhabs. of East Machias*, 116 Me. 423, at p. 426, 102 A. 181, at p. 182 (1917) :

> "It is settled law in this State that 'when the overseers act in good faith and with reasonable judgment touching the necessity of relief of persons found in need their conclusions will be respected in law.' *Hutchinson* v. *Carthage*, 105 Maine, 134; *Bishop* v. *Herman*, 111 Maine, 58. Their conclusions with regard to the nature and extent of relief should in like manner be respected. In neither case will their decision be final but as they are officers sworn to do their duty it is presumed that they act with integrity until the contrary is shown. *Portland* v. *Bangor*, 42 Maine 403, 410; *Bishop* v. *Herman*, before cited."

For a restatement of the rule see *Fort Fairfield* v. *Millinocket*, 136 Me. 426, 12 A. (2nd) 173 (1940).

As we have indicated, there is no suggestion that the supplies were of a type not suitable for pauper relief. "Destitution" is the problem before us. Without reaching for details in the record, there is evidence showing the small earnings and lack of resources of Brown for the support of

his wife, nine children and himself during a substantial period at the time the aid was given. Much of necessity must be left to the fact finder in the evaluation of the facts found by him in terms of distress and necessity of immediate relief. We cannot say under the "any evidence" rule that the referee's findings were without justification.

Objection is also made to the rule stated by the referee as follows:

> "Our Court has construed this language (Section 28, supra) as giving to the Overseers the right to determine what is reasonably necessary and proper to relieve the destitution or the poverty. It is only in those cases where there has been what amounts to a gross abuse of discretion, or bad faith or collusion, that the Court will interfere with the judgment of the Overseers. The presumption is that the supplies were furnished in good faith and the burden is on the defendant to show otherwise. There is no evidence in this case to indicate that the Overseers of Bethel either abused their discretion or acted in bad faith or were collusive. On the contrary, I find that the family situation quite clearly indicated that aid was required and that the amount of aid furnished was reasonable."

In our view the referee did no more than apply the rule of the *Machias* and *Fort Fairfield* cases, *supra.* Strictly the question did not concern the burden of proof, but the burden of going forward, or the sufficiency of certain evidence to permit a finding of ultimate fact.

The referee, however, went beyond the point of stating a rule of presumption. On evidence in addition to the acts of the overseers he made the finding, quoted above, which can only mean that Brown, his wife and nine children were in distress and required immediate relief. They were found to be "destitute." This was a question of fact and was finally determined by the referee.

### 3. Mental Capacity of Brown—Exception 8

The issue is whether there was any evidence to warrant the necessary finding that Brown had sufficient mental capacity to qualify as a pauper under Section 2, *supra*. We considered the capacity and intelligence of Brown in discussing the issue of legal settlement. There was no error in finding capacity to move his residence from Bethel to Hanover. There is evidence of his life and actions in Bethel since 1946. We are satisfied there was probative evidence from which the referee could properly find, as he did, that Brown had sufficient mentality to understand and realize that he was making application for pauper supplies and was receiving them with full knowledge that they were such.

### 4. Unlawful delegation of duties—Exception 9

The referee is charged with error in finding that the overseers of the poor "did not unlawfully delegate their powers and duties" in furnishing the supplies. The controversy lies in the facts and not in the law. The governing principle is that overseers of the poor cannot delegate to others their discretionary powers and duties. *Fort Fairfield* v. *Millinocket, supra*.

The issue of fact was whether when relief was first given, the grocer and not the overseers determined the need and amount of supplies to be given Brown. On this point there was a conflict of testimony. Brown and the overseer who had the matter directly in hand in substance say the decision was that of the overseers. The grocer on cross examination did not recall whether the overseer placed a limit or told him to use his own judgment. We earlier commented on the conflicting evidence. The referee chose to believe the overseer's version. The finding stands.

Under this exception the defendant town argued that the assistance rendered was not reasonable and proper on the

ground of lack of supervision, inspection, and control by the overseers. This issue, although contained in a list of issues in the bill of exceptions, is not found within Exception 9 and so is not before us.

In passing, we may say however that the referee plainly could find, as he did, that the overseers performed their important duties in a lawful manner.

There were no errors in the decision of the referee. The entry will be

*Exceptions overruled.*