## PRINGLE v. GUILD et al.

### (Circuit Court, D. South Carolina. January 14, 1903.)

**1. New Trial—Grounds—Matters Concluded by Verdict.**
Where there is a conflict of testimony between unimpeached witnesses on an issue, it is the province of the jury to determine such issue, and the court is not authorized to set aside their verdict, although it may believe the preponderance of evidence to be the other way.

At Law. On motion for new trial.

Wm. H. Lyles and D. W. Robinson, for plaintiff.
R. W. Shand and P. H. Nelson, for defendants.

SIMONTON, Circuit Judge. This case now comes up on a motion for a new trial by the defendants. J. S. Guild and George M. Guild, the defendants, were under contract with the city of Columbia for the construction of a sewerage system in said city. To this end, they were authorized to open ground in the city, and make excavations necessary for the work. Among other places, the defendants constructed a tunnel on Indigo street, under the main track and siding of the Atlantic Coast Line Railway, and, for the purposes of the tunnel, dug a shaft or hole between these tracks; the said shaft or hole being at the opening some 5 feet in length, 4 feet wide, and 14 or 15 feet deep. The excavation along Indigo street completely cut off approach to the sidewalk, with a bank of earth of considerable size, through which there were three openings, so that passengers might cross from one side of the street to the other. One of these was across the tracks of the Atlantic Coast Line, alongside of this shaft or hole; the passage across being some 22 feet wide. On the night of 4th August, 1902, Robert S. Pringle who lived in Indigo street, at a point very near to this passage, crossed from the side of Indigo street opposite to his home, and pursued his way along this passage. He fell into this hole or shaft, and in the fall suffered injuries from which he shortly afterwards died. Thereupon his widow and administratrix brought this action under the provisions of the Code of South Carolina (sections 2851 and 2852) giving a right of action to the personal representative of a deceased person whose death resulted from the negligence of another. The case was tried before a jury, much testimony having been introduced on each side; and at the close of the testimony the jury were sent to the locus in quo, so that by personal observation they could understand the case. The trial was conducted on both sides with marked ability, and nothing of a sensational character was introduced into it. After full argument, the case was submitted to the jury, the points of law were distinctly stated by the trial judge, and the solution of the issues of fact was submitted to the jury. They found for the plaintiff $5,000. Notice of a motion for a new trial was given at the rendition of the verdict. The motion has now been heard on the following grounds: (1) Because said verdict, under the law of the case, as charged by his honor, was capricious and unsupported by the evidence. (2) Because the uncontradicted testimony established the facts that R. S. Pringle knew of the existence, location, and dangerous depth of the hole into which he fell; knew at the time of his fall that he was crossing Lincoln street just where the hole was; and the precise location of the hole was manifested by the light of the street arc light. (3) Because the overwhelming weight of the testimony showed that at the time of Pringle's fall a red lantern was standing and burning on the edge of the hole into which he fell,—an all-sufficient warning to him of its danger, if he had used his senses. (4) Because, from the testimony, R. S. Pringle was himself negligent, and such negligence contributed to such injury. Therefore plaintiff was not entitled to a verdict.

There were two issues presented to the jury. They were instructed that it was the duty of the defendants to take all reasonable precaution to prevent injury to the passers-by by reason of the existence of this

hole or shaft. They were also instructed that, if they came to the conclusion that there was negligence on the part of the defendants in this behalf, yet if Robert S. Pringle himself did not exercise ordinary care, and by reason thereof was injured, the plaintiff could not recover.

It appeared that the defendants contended that a red lamp had been placed alongside of the hole on the night and at the time of the accident, and that this was a reasonable and proper precaution. On this point there was conflict of evidence. The defendants introduced a number of witnesses who swore positively to the fact that the red lamp was in position before and up to the time of the accident. The plaintiff producing a few witnesses who were as positive in assertion that the lamp was not there. The high character of these witnesses was admitted. The attention of the jury was called to this conflict, and they were instructed to solve it. The character of none of the witnesses was impeached.

Under section 726, Rev. St. U. S. [U. S. Comp. St. 1901, p. 584], federal courts have power to grant new trials for reasons for which new trials have been usually granted in the courts of law, or, in the language of the seventh amendment to the constitution of the United States, "no fact tried by a jury shall be otherwise re-examined in any court of the United States, than according to the rules of the common law." The action of the court is not reviewable. New trials at law are granted when the trial court erred in stating the law, or when the verdict of the jury has no evidence to sustain it, or when the great preponderance of the evidence is against the verdict, or when the verdict is due to passion, prejudice, or partisan feeling. In the present case there was evidence on the part of the plaintiff. So the question is as to the preponderance of the evidence. In Pim v. Wait (C. C.) 32 Fed. 741, it was held that, when the evidence on an issue tends to support the views of each party, a new trial will not be granted on the ground that the verdict is against the weight of evidence. In Nonce v. Railroad Co. (C. C.) 33 Fed. 429, it was held that when the evidence is conflicting, and the witnesses are of good character, the verdict, if not manifestly wrong or improperly obtained, ought not to be set aside. And this rule prevails even though the court might have rendered a decision different from that of the jury. Plummer v. Mining Co. (C. C.) 55 Fed. 755; Sargent v. Association (C. C.) 35 Fed. 712. The supreme court of the United States, in Pleasants v. Fant, 22 Wall. 121, 22 L. Ed. 780, discusses this subject:

"It is the duty of a court, in its relation to the jury, to protect parties from unjust verdicts, arising from ignorance of the rules of law and of evidence, from impulse of passion or prejudice, or from any other violation of their lawful rights in the conduct of a trial. This is done by making plain to them the issues they are to try; by admitting only such evidence as is proper in these issues, and rejecting all else; by instructing them in the rules of law by which that evidence is examined and applied; and finally, when necessary, by setting aside a verdict which is unsupported by evidence or contrary to law. In the discharge of this duty, it is the province of the court, either before or after the verdict, to decide whether the plaintiff has given enough evidence to support or justify the verdict. Not whether on all the evidence the preponderating weight is in his favor. That is the business of the jury. But conceding to all the evidence offered the greatest probative force which, according to the law of evidence, it is fairly entitled to, is it sufficient to justify a verdict? If it does not, then it is the duty of the court, after a verdict,

to set it aside and grant a new trial. In determining a motion for a new trial, the court can—indeed, must—consider the preponderance of the evidence, and, if it clearly appears that the weight of the evidence is against the verdict, a new trial should be granted. Felton v. Spiro, 47 U. S. App. 402, 24 C. C. A. 321, 78 Fed. 576. The rule at common law is stated in Carstairs v. Stein, 4 Maule & S. 192. There the court refused a new trial where the evidence was conflicting, not satisfactory, and contrary to the intimations of the trial judge. It was held that a verdict should be sustained unless it appears clear that the jury had drawn an erroneous conclusion. The court, in granting new trials, does not interfere unless to remedy some manifest abuse, or to correct some manifest error in law or fact."

The evidence in the case at bar has been carefully considered. The whole of this part of the case turns upon the credibility of the witnesses, or more properly upon the weight which the jury gave to the testimony of the witnesses. There was a direct conflict. This conflict the jury solved. The matter was entirely within their peculiar province. "It is the peculiar province of the jury to determine the credibility of the witnesses and weigh the evidence. A verdict will not be set aside merely because the court, if trying the question of fact, would have found differently. A verdict must be manifestly and palpably wrong, to justify a new trial." 14 Enc. Pl. & Prac. p. 772.

The charge of the court was in these words:

"The ordinances of the city provided that, when excavations were made, suitable barriers should be placed around them, and sufficient danger signals maintained at night, to prevent accidents to street passengers. This must be done in every case in which such barriers are possible. If it was impossible to put up barriers, then some other means must be substituted, equally efficient, to give the public notice that an excavation exists, and enable them to avoid it. The end to be subserved was notice—ample notice—to the public that an excavation exists. If such notice is given, then the purpose is subserved. Now, you will examine the testimony, and decide: (1) Was it necessary to excavate the hole into which Mr. Pringle fell? You may assume that it was necessary, there being no evidence to the contrary. (2) The hole being there, on a path used by the public, did the defendants, their agents or servants, take all needful, proper, and reasonable precautions to give notice of its existence? They did not put a barrier around it. It is said, because of its peculiar proximity to the railroad track, a barrier around the hole was impossible. This you must determine. If it was impossible to put up such a barrier, did the defendants substitute another means of precaution, equally good? Did they have a red lamp at the hole? On this point there is conflict of evidence. This you must solve, and you alone. You have seen and heard the witnesses, and your conclusion depends upon your belief of these witnesses. If you believe that there was a red lamp at this hole, was this an efficient substitute, and did it give sufficient notice, aided by other lights,—notably, the arc light in that vicinity? Were those lights there at the time of the accident? If the lamp was at that hole, if it was burning, if it was ample and sufficient notice of the hole, a good substitute for a barrier or other mode of precaution, then you can find that defendants were not negligent. But if you find either that the lamp was not there, or that it was not burning, or, if it was, that it was not sufficient notice,—nor a proper substitute for any other mode of notice,—then you can find the defendants negligent."

Under this charge the jury found their verdict for the plaintiff. It would be an invasion of the province of the jury to set the verdict aside, for it can be sustained on a correct theory, applicable to the facts, if the jury believed the witnesses for the plaintiff. "When it can be seen that the jury was warranted in inferring a state of case that would admit of a verdict, the judgment should be upheld, although it seems to be against the preponderance of evidence. The prevailing

party is entitled to all inferences legitimately arising from the finding." Bloomer v. Denman, 12 Ill. 240.

The jury were further instructed that, even if they found defendants negligent, they could not find for the plaintiff if the deceased intestate was wanting in ordinary care, and for want of such care fell into the hole. The facts bearing on this question were fully discussed before the jury. No one saw him approaching the hole, or saw him fall in. Whether he exercised ordinary care, or not, is a matter of inference; and the strongest argument for the position that he did not exercise ordinary care is that he fell into the hole, the existence and location of which he knew. But this argument loses much of its strength if the jury were right in finding defendants negligent in not using proper precaution to notify the public. The jury, by their verdict, clearly showed that they did not think Mr. Pringle guilty of contributory negligence.

Reviewing the whole case, the court does not feel at liberty to reverse the finding of the jury. The motion for a new trial is dismissed.