## DONOHUE v. DYKSTRA et al.

(District Court, E. D. Michigan, S. D. January 9, 1918.)

No. 5942.

1. NEW TRIAL ⊜⟶71—CONFLICTING EVIDENCE.
    A verdict on conflicting evidence will not be disturbed by the trial court on motion for new trial where there is substantial evidence in its support.

2. BANKRUPTCY ⊜⟶166(4)—PREFERENCE—SUSPICION.
    A creditor's mere suspicion that a debtor who makes a payment or gives security is insolvent does not, where the transaction occurs within four months of bankruptcy, render it preferential; for it is necessary that the creditor have a reasonably founded belief of the debtor's insolvency before such payment or giving security would amount to a preference.

At Law. Action by Eugene C. Donohue, trustee of the American Silica Company, a corporation, bankrupt, against Joseph W. Dykstra and Alexander Zindlor, copartners doing business as J. W. Dykstra & Co., to recover an alleged preference of the bankrupt made within four months of bankruptcy. On motion for new trial after verdict for defendants. Motion denied.

Max Kahn, of Detroit, Mich., for plaintiff.
Clarence E. Wilcox, of Detroit, Mich., for defendants.

TUTTLE, District Judge. This is a motion for a new trial on the ground that the verdict of the jury was so contrary to the evidence that it should be set aside and either a judgment non obstante veredicto entered or a new trial granted.

This was an action brought by the plaintiff, as trustee of the estate of the American Silica Company, a Michigan corporation, bankrupt, against the defendant partnership, J. W. Dykstra & Co., to recover from the latter an alleged preference given by said bankrupt to said defendant within four months prior to the filing of the petition in bankruptcy against said corporation; said alleged preference consisting of an assignment of certain book accounts as security for the payment of a pre-existing indebtedness due and owing by said corporation to said partnership. The court submitted to the jury as questions of fact for its determination the material questions in such a case, namely: First, whether at the time of the transfer alleged to constitute a preference said bankrupt was insolvent; second, whether such transfer operated as a preference; and, third, whether the defendant then had reasonable cause to believe that such transfer would effect a preference. It is not disputed that these were the material issues involved, as this action was based upon action 60b of the Bankruptcy Act (Act

⊜⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
247 F.—38

July 1, 1898, c. 541, 30 Stat. 562 [Comp. St. 1916, § 9644]), providing, among other things, as follows:

"If a bankrupt shall have  *  *  *  made a transfer of any of his property, and if, at the time of the transfer,  *  *  *  and being within four months before the filing of the petition in bankruptcy,  *  *  *  the bankrupt be insolvent and the  *  *  *  transfer then operate as a preference, and the person receiving it or to be benefited thereby, or his agent acting therein, shall then have reasonable cause to believe that the enforcement of such  *  *  *  transfer would effect a preference, it shall be voidable by the trustee and he may recover the property or its value from such person."

Counsel for plaintiff took no exceptions to the charge of the court submitting such issues to the jury, although given the opportunity so to do at the conclusion of the charge. He now, however, contends that the evidence on these material issues was insufficient to sustain the verdict for the defendant, which verdict for that reason should be set aside. The sole question raised or argued is whether there was sufficient conflict in the evidence to support the verdict of the jury rendered on such evidence.

As plaintiff did not request the court to instruct the jury to find in his favor on any of the issues submitted, and as he failed to take any exceptions to such charge, it would seem that he is not now in a position to make the contention thus urged. Pennsylvania Casualty Co. v. Whiteway, 210 Fed. 782, 127 C. C. A. 332.

[1, 2] Aside, however, from this consideration, I am satisfied, upon a careful examination and consideration of the record and briefs of counsel, that the charge was as favorable to plaintiff as the circumstances warranted, and that there was sufficient evidence to sustain the verdict. It is, of course, well settled that if there is any real conflict in the testimony, and there is any substantial evidence to support the verdict found, such verdict should not be set aside by the Court, even if the latter would have reached a different verdict from that of the jury on the same evidence. Mt. Adams & E. P. Inclined Railway Co. v. Lowery, 74 Fed. 463, 20 C. C. A. 596; Pringle v. Guild (C. C.) 119 Fed. 962; Pittsburgh Railways Co. v. Sullivan, 166 Fed. 749, 92 C. C. A. 429.

Without reviewing the evidence in detail, I deem it necessary only to say that I am satisfied that there was evidence from which the jury might properly have found, as it did, a verdict in favor of the defendants upon the material issues of fact submitted for its consideration. Particular stress is laid by plaintiff upon his contention that the verdict was contrary to the clear weight of the evidence on the question of reasonable cause to believe that the transfer in question would effect a preference. I am unable to agree with this contention, and think that the evidence on this question was sufficiently in conflict to warrant the verdict. In the language of the Supreme Court in the leading case of Grant v. First National Bank of Monmouth, 97 U. S. 80, 24 L. Ed. 971:

"It is not enough that a creditor has some cause to suspect the insolvency of his debtor; but he must have such a knowledge of facts as to induce a reasonable belief of his debtor's insolvency, in order to invalidate a security taken for his debt. To make mere suspicion a ground of nullity in such a

case would render the business transactions of the community altogether too insecure. It was never the intention of the framers of the act to establish any such rule. A man may have many grounds of suspicion that his debtor is in failing circumstances, and yet have no cause for a well-grounded belief of the fact. He may be unwilling to trust him further; he may feel anxious about his claim, and have a strong desire to secure it, and yet such belief as the act requires may be wanting. Obtaining additional security, or receiving payment of a debt, under such circumstances, is not prohibited by the law. Receiving payment is put in the same category, in the section referred to, as receiving security. Hundreds of men constantly continue to make payments up to the very eve of their failure, which it would be very unjust and disastrous to set aside. And yet this could be done in a large proportion of cases if mere grounds of suspicion of their solvency were sufficient for the purpose.

"The debtor is often buoyed up by the hope of being able to get through with his difficulties long after his case is in fact desperate; and his creditors, if they know anything of his embarrassments, either participate in the same feeling, or at least are willing to think that there is a possibility of his succeeding. To overhaul and set aside all his transactions with his creditors, made under such circumstances, because there may exist some grounds of suspicion of his inability to carry himself through, would make the bankrupt law an engine of oppression and injustice. It would, in fact, have the effect of producing bankruptcy in many cases where it might otherwise be avoided.

"Hence the act, very wisely, as we think, instead of making a payment or a security void for a mere suspicion of the debtor's insolvency, requires, for that purpose, that his creditor should have some reasonable cause to believe him insolvent. He must have a knowledge of some fact or facts calculated to produce such a belief in the mind of an ordinarily intelligent man."

Whether the facts or circumstances brought to the attention of the defendants were such as to cause a reasonably prudent person to believe that the effect of the assignment of these book accounts would effect a preference was, upon the evidence offered at the trial, a question of fact to be determined by the jury. Plaintiff produced only one witness on the material issues, and the testimony of such witness and that introduced on behalf of defendants was in important respects in direct conflict. Under these circumstances, I should not feel justified, even if I were so disposed, to reject the finding of the jury and substitute my own in the place thereof. To do so would, in my opinion, be a clear usurpation by the court of the functions of the jury acting within its proper province.

For the reasons stated, the motion will be denied, and a judgment entered in accordance with the verdict.