INHABITANTS OF MONROE *vs.* INHABITANTS OF HAMPDEN.

Waldo.   Opinion March 1, 1901.

*Pauper.   Evidence.   Voting.   New Trial.*

1.  Voting, and taxation acquiesced in and affirmed by the payment of the tax, are acts of much stronger probative force when relied upon to prevent the gaining of a pauper settlement, than when offered to establish one.

2.  A pauper had his original derivative settlement in the defendant town which claimed that he had acquired a new settlement by having his home in the town of S. for a period of five successive years at two different times.   There was evidence tending to show that during the first period relied upon he left that town and went into another and there voted, was taxed and paid taxes; that during the second period he left the town of·S. and went to another town in search of employment which he obtained, without any intention as to returning, that his intention in that respect was unformed and undetermined. On each occasion he took with him all that he possessed, leaving behind him neither property, family, nor visible sign of a home. *Held;* that this evidence, if believed, would justify a finding by the jury that on each occasion there was an abandonment of the pauper's former place of residence in S.

3.  Where the evidence is conflicting and uncertain, a new trial will not be granted when to do so would be to substitute the judgment of the court for that of the jury, as to pure questions of fact about which intelligent and conscientious men might have different views.

On motion by defendant.   Overruled.

Assumpsit for pauper supplies.   Verdict for plaintiff.

The case is stated in the opinion.

*W. P. Thompson; R. F. and J. R. Dunton,* for plaintiff.

*H. W. Mayo and T. W. Vose,* for defendant.

SITTING:   WISWELL, C. J., WHITEHOUSE, SAVAGE, FOGLER, POWERS, JJ.

POWERS, J.   Motion to set aside the verdict which was for the plaintiffs.   The pauper had his original derivative settlement in the defendant town, but the defendants claimed that he subsequently gained a settlement in his own right in the town of Swanville, by having his home there for five successive years after he

became of age, without directly or indirectly receiving pauper supplies.

In March, 1875, when the pauper became of age, he had his home with his aunt in the town of Swanville, and continued to have his home with her until the following summer, when he finally left her house and went to work at another place in the same town. From this time until his marriage on August 30, 1891, he had no particular house or place in the town of Swanville or elsewhere to which he had a right to resort as a home, except as he was at work. He was a laboring man with no fixed place of abode. He says: "I had no home only wherever I was at work," that whenever he went out of Swanville it was to work, that the purpose for which he came back to Swanville was to work, and that on such occasions he took with him out of and back again into Swanville all that he possessed. He was taxed with a highway or poll tax, or both, and paid taxes and voted, when present, in that town from 1875 to 1892, both inclusive, with the exception of 1876 when he was involuntarily absent in Wiscasset jail, and the years 1882 and 1883.

The defendants rely, first, upon the period from March, 1875, to April, 1881, during all which time they claim he had his home in Swanville. At some time, however, in or near this period, the pauper left Swanville and went to work in plantation No. One, voted there in March, was taxed there in April following and paid the tax. As to precisely when this was, the evidence was meager and conflicting. The pauper testified that he did not know and could not tell when it was, that it might have been eight years before his marriage, which would bring it in 1883, and that he was taxed the same year in Swanville. The case clearly shows that he was not taxed in Swanville in 1883. According to his written statement, introduced by the defendants and testified by him to be correct as far as he knew, it was the year he worked for Albert Dam, and the second year in which he worked for Cunningham Bros. The same statement shows that the year in which he worked for Dam was in 1879, and the pauper's testimony at the trial shows that this was the first year in which he worked for

Cunningham Bros. One other witness testified that he thought it was in 1883. The reason he assigned for thinking so was that it was the same year the pauper worked for Littlefield. He worked for Littlefield in two different years, and the first one was the same. summer that he worked for Dam, 1879, within the five successive years relied upon by the defendant.

Upon this branch of the case the burden was upon the defendants. "The party setting up five years continuous residence is bound to prove it. If while attempting to prove it a break in the actual residence is shown, it is for the party to establish such a state of facts as shows that the legal home remained there notwithstanding the absence." KENT, J., in *Ripley* v. *Hebron*, 60 Maine, 379. Taxation and voting, while important, are not conclusive. The assessment and payment of a poll tax is strong evidence that a person has his home in a town on the first day of April. It applies with much less force to the intervening periods and is not inconsistent with a person having changed, and abandoned his home in such town during the time between April first of two successive years. *Westbrook* v. *Bowdoinham*, 7 Maine, 364; *Littlefield* v. *Brooks*, 50 Maine, 475. The inference to be drawn from voting is much stronger as to the three months immediately preceeding than as to the intervening time. It is simply a fact, with the other facts in the case to be weighed by the jury. *East Livermore* v. *Farmington*, 74 Maine, 155.

Voting, and taxation acquiesced in and affirmed by the payment of the tax, are acts of much stronger probative force when relied upon to prevent the gaining of a pauper settlement than when offered to establish one. The former may be effected in a day, if the requisite intention coincides with the absence from home. The latter must stretch through every day of five successive years. They tend much more strongly to establish the presence at the time when the tax is assessed and the intention at the time the vote is cast, than they do at any subsequent time. While it is possible that the court might have reached a different conclusion, it cannot be said that the jury were not justified in finding that the March meeting, at which the pauper voted in No. One, was in 1879. If

so, the act itself carried with it at the time an affirmation on his part that for three months previous he had had an established residence and home in that plantation. He was away from Swanville; he was present in No. One. He had left nothing behind him in Swanville, neither property, family, nor visible sign of a home; he had taken all that he possessed to No. One and had it with him at the time. Under these circumstances the law makes no presumption as to the pauper's intentions one way or the other. *Ripley* v. *Hebron,* supra. What his intentions were in fact was for the jury to determine under all the circumstances and probabilities. *Solon* v. *Embden,* 71 Maine, 418. If the jury found that he voted in No. One in 1879, the court cannot say that it was manifest error for them to draw the inference that, at the time he so voted, he had no continuing purpose of retaining and returning to Swanville as his home.

The second period relied upon by the defendants is from April 1, 1884, to August 1, 1892, during all which time the pauper was taxed and paid taxes in the town of Swanville. In the fall of 1887, however, he went to Bangor to obtain work. In his written statement, put in by the defendants and made substantive evidence by his testimony that it was true as well as he knew, he says: "I went to Bangor late in the fall of 1887 in search of a job. I think I took everything I had with me. When I went to Bangor I did not know whether I would return to Swanville. It depended on what employment I got." From this language, in connection with all the other evidence in the case, especially his statement that whenever he came back to Swanville it was for work, the jury might well find that when in the fall of 1887 he went to Bangor in search of a job, taking with him all his worldly possessions and leaving behind him no visible sign of a home, it was without any intention as to returning, that his purpose was unformed and indeterminate. If so, it was an abandonment of any home he might have had in Swanville, *North Yarmouth* v. *West Gardiner,* 58 Maine, 207, and would prevent the pauper gaining a settlement there during the second period relied upon by the defendants.

The evidence at the trial was conflicting and uncertain. It was

for the jury, after weighing all the evidence, circumstances, and probabilities, to determine the intention of the pauper at the times of his numerous and long continued absences from Swanville. The case has been twice tried and each time has resulted in a verdict for the plaintiffs. To grant the motion would be to substitute the judgment of the court for that of the jury, as to pure questions of fact about which intelligent and conscientious men might have different views. This the court will not do. *Parks* v. *Libby*, 92 Maine, 133.

*Motion overruled.*