INHABITANTS OF ELLSWORTH *vs.* INHABITANTS OF BAR HARBOR.

Hancock.        Opinion March 16, 1923.

*It is essential to the establishment of a home in a town that there should be personal presence, and also an intent to remain, continued for five years necessary to establish a settlement, without being absent during such five years with an intent not to return.*

To establish a home in a town there must be personal presence with an intent to remain, or in other words to reside there.    If absent from such town within the five years necessary to establish a settlement without a continued fixed intention to return, the continuity of the home is broken and the settlement is not acquired.

Testimony of the person whose settlement is being investigated as to his intent to return, while admissible, can have little weight when his acts during the period in question refute his declarations made at the time of the trial.

It is clearly apparent that the verdict of the jury was unwarranted upon the evidence and that the jury must have misunderstood or misapplied the law to the facts, they were warranted in finding from the evidence, or were influenced by some bias or prejudice.

On motion for a new trial.    An action brought under R. S., Chap. 19, Secs. 70 and 71, to recover for supplies furnished by plaintiff to a family quarantined by the local board of health of plaintiff city on account of scarlet fever.    A verdict for plaintiff was rendered by the jury, and defendant filed a general motion for a new trial.    Motion sustained.    New trial granted.

The case is fully stated in the opinion.

*Daniel E. Hurley,* for plaintiff.

*Charles H. Wood,* for defendant.

SITTING:    CORNISH, C. J., SPEAR, PHILBROOK, WILSON, DEASY, JJ.

DEASY, J. did not participate.

WILSON, J.    An action to recover under Sec. 71, Chap. 19, R. S., for supplies and medical attendance furnished to the family of one Chalres A. Emerson during a quarantine ordered by the Board of

Health of the city of Ellsworth. A jury found for the plaintiff and the case comes before this court on motion for a new trial on the usual grounds.

It is admitted that the quarantine was proper and in the interests of public health, and that the supplies and medical attendance were properly furnished, that the prices charged in the plaintiff's writ are reasonable, and that Charles A. Emerson is not able nor has he any parent able to pay for said supplies and medical attendance.

It does not appear, though no question was raised at the trial, nor before this court, that the Board of Health of the city of Ellsworth had also determined that the supplies and medical attendance so furnished were not legitimate expenditures for the protection of public health, which is essential to the recovery of the town of the settlement of the person whose family is quarantined.

The only question argued before this court or raised at the trial was the settlement of Charles A. Emerson.

It is admitted that his derivative settlement when he became of age, approximately thirty years ago, was in the town of Waltham in Hancock County. To recover of the defendant town, therefore, the plaintiff must prove that for at least five successive years between his becoming of age and the date of the writ Charles A. Emerson had a home in the defendant town without receiving pauper supplies either directly or indirectly, and in the same manner had not since acquired a settlement in any other town.

To establish a home in the first instance in any town there must be personal presence with an intent to remain, or in other words, to reside there. If absence from such town is later shown before five successive years have elapsed, it must be made to appear that such absence was only temporary, that there was a fixed purpose to return. The home must be continuous. If within the five years the person is absent from the town without an intention of returning to it the continuity of his home is broken, and the settlement is not acquired. To continue a home while absent there must be at all times an intention to return to it. The intent need not at all times be active in the mind, but as often as it is the subject of thought at all, the *animus revertendi* must be found to exist, or the home is lost. *North Yarmouth* v. *West Gardiner*, 58 Maine, 207; *Ripley* v. *Hebron*, 60 Maine, 379; *Detroit* v. *Palmyra*, 72 Maine, 256; *Thomaston* v. *Friendship*, 95 Maine, 201.

With these principles of law in mind, was the verdict of the jury upon the evidence presented manifestly wrong? Certain facts are not in dispute, or were clearly proven. Charles A. Emerson left the town in which he had a derivative settlement about 1906 and came to Ellsworth and obtained work and so far as the evidence discloses remained there until 1910. He voted there at least in 1908, was assessed for a poll tax there for the years 1909-10-11 and 1912, which taxes were paid. While an attempt was made to show that the taxes assessed in 1911 and 1912 were not paid by him, by showing that politicians in Ellsworth sometimes paid poll taxes of voters, no evidence was offered that anyone paid the taxes assessed to Charles Emerson except himself, unless it be inferred from his answer, that he never paid two taxes in one year, it appearing that the 1911 and 1912 taxes were both paid in August, 1912, which we think is not sufficient to overcome the presumption that every man pays his own taxes, or at least they are paid with his consent. In any event this witness when first inquired of as to his paying them for each of these years said: "I guess I did," though he later states he only paid one tax to the Collector of Ellsworth.

It is not contended that he was assessed and paid taxes in the defendant town during any of these years although he went to Bar Harbor to work in 1910 and it is claimed remained there at work, except during a brief period, until 1913.

In April, 1913, an event occurred which required him to indicate at that time with what intent he had left Ellsworth and remained in Bar Harbor since 1910. He was to be married. The law required the filing of a certificate of his intentions in the office of the clerk of the town or city where he resided. He applied at the clerk's office of the plaintiff city and his certificate was recorded there by the clerk. Notwithstanding his statements in reply to leading questions by the plaintiff's attorney that he went to Bar Harbor in 1910 intending to make his home there, in view of the purpose for which it appears he went, viz.: to obtain employment, and the evidence of continued payment of taxes in Ellsworth up to 1913, and his recognition of Ellsworth as his place of residence in April, 1913, we think that if the jury's verdict was based upon the establishment of a home in Bar Harbor prior to April, 1913, it was manifestly wrong.

It does not appear that he had any abiding place in the defendant town prior to his marriage except wherever he happened to be work-

ing.   Proof of an intent to remain there is entirely lacking, except his own statements now, which can have little weight against his own positive acts during that period.   Residence, it is true, is largely a question of intent, but pauper settlements should not be determined by the mere say so of the pauper ten years afterward unless his acts at the time square with his present declarations.

After his marriage, however, it cannot be said that there was not sufficient evidence for the jury to find that from the time he brought his family to the defendant town the last part of April, 1913, until at least November, 1916, he had not established and maintained a home in Bar Harbor even though from October, 1915, it was in a lumber camp.   He had purchased it and moved his household goods into it and there set up his *Lares* and *Penates*, and it was their only sanctuary for more than two years.

In July, 1916, in order that he might be near his work on a lumber operation, his camp and household goods were moved into the adjoining town of Mt  Desert at Oak Hill, so called, where he remained until November, 1916, when the operation at Oak Hill being completed, his camp was again moved to the scene of another operation, but still in the town of Mt. Desert, where it remains to the present time. There he remained in the employ of the same person until January, 1918, when his wife about to be confined at childbirth left the camp, which had been their abiding place for nearly three years, and went, not to Bar Harbor, where they now insist it was always their intent to return, but to the plaintiff city of Ellsworth, where she was delivered of a child and remained until March of that year.

Emerson completed his work in Mt. Desert for Mr. Nutting, by whom he had been employed since 1915, and also went to Ellsworth where his family then was.   When first inquired of as where he then went, he said: "I moved up here," meaning to Ellsworth.   After a few days, however, he obtained employment in Bar Harbor.   In March, 1918, his family came to Bar Harbor where they lived on a farm where he was employed until September, 1918, when they again returned to Ellsworth, where they have remained ever since.

Though both Emerson and his wife testified that when they moved to Oak Hill in 1916 they intended to return to Bar Harbor they never did except in connection with employment obtained by him during the summer of 1918, or from March to September.   Such might have been their intent when they moved to Oak Hill; but there is

nothing to indicate that such intent continued after they moved their camp back to the Kittridge lot, so called, in November, 1916, which was also in the town of Mt. Desert, except the mere statement of Emerson himself again in reply to leading questions by plaintiff's attorney for whom he is apparently a very willing witness though offered by the defendant.

It is more significant as to whether his intent continued, that when his wife was to be confined, and although he was about to complete his work with the man for whom he had been employed nearly three years and was to leave his camp as it proved never to return again, he did not take his wife to Bar Harbor, but to Ellsworth, and the time spent in Bar Harbor after that was not in the nature of a return home but in consequence of an employment on a farm during the spring and summer of 1918.

Assuming that there is evidence of the establishment of a home in the defendant town after his marriage in April, 1913, there is an entire lack of evidence of a continuing fixed intent to return to the defendant town after November, 1916, when he moved from Oak Hill to the Kittridge lot in Mt. Desert, except his own declaration which is not supported by any acts of his or other evidence in the case. On the contrary, his acts refute his declarations.

It would be unfortunate if the burden of towns to maintain paupers could be shifted, or fixed, by such evidence. While the question of the continuity of his home and of his intent, when absent, is one of fact, the jury in this case must have misunderstood or misapplied the law to the facts which they were warranted in finding from the evidence, or were influenced by some bias or prejudice. We think their verdict is clearly unwarranted upon the evidence presented and should be set aside.

Entry will be:

*Motion sustained.*
*New trial granted.*