INHABITANTS OF THE TOWN OF GOULDSBORO

*vs.*

INHABITANTS OF THE TOWN OF SULLIVAN.

Hancock.　　Opinion, January 25, 1934.

*Hale and Hamlin,*
*H. L. Graham,* for plaintiff.
*Blaisdell & Blaisdell,* for defendant.

Sitting: Pattangall, C. J., Dunn, Sturgis, Barnes, Thaxter, Hudson, JJ.

Dunn, J. This case was reserved on a report of the evidence. The suit is purely and strictly statutory. It is by the town of Gouldsboro against the town of Sullivan, on the theory of ultimate liability, for reimbursement for supplies to a needy person, the destitution of whom, and of whose family, Gouldsboro relieved. A stipulation by counsel limits the issue to whether, on the day the person in distress, one Lawrence H. Stanley, was the recipient of public aid (that is, on June 20, 1931), he had his settlement as a pauper in Sullivan.

Lawrence H. Stanley attained full age July 18, 1922, the day preceding the twenty-first anniversary of his birth. 1 Bl. Com., 463. He appears to have been born in Mount Desert, which town was apparently the home, within the meaning of the statute concerning the status of a pauper, of his father. The latter testifies that in 1913 or 1914 (the testimony of another witness is definitely 1914), he removed from Mount Desert to Sullivan, taking his wife and children, and his belongings, with him. He said on the witness stand, in brief, that his settled intention in removing to, and establishing himself in, the last named town, was that thenceforth it should be his home. He purchased property, and he and his family lived there throughout the minority of Lawrence.

The father was not always personally in Sullivan. One summer he was in Vinalhaven, where he had work; one or two winters he worked in the woods in or near Gouldsboro. On at least one of these absences, he took with him some of his household goods, and was accompanied by his family. But he testifies there was never intention to abandon his residence in Sullivan; his purpose to return, which he did, when each job was ended, was fixed and determinate. Such temporary absences do not prevent the acquirement of a pauper settlement. *Ripley* v. *Hebron*, 60 Me., 379; *Rumford* v. *Upton*, 113 Me., 543, 95 A., 226; *Eagle Lake* v. *Fort Kent*, 117 Me., 134, 103 A., 10; *Madison* v. *Fairfield*, Me., , 168 A., 782. The test is that of the formed intention of returning. *Warren* v. *Thomaston*, 43 Me., 406; *North Yarmouth* v. *West Gardiner*, 58 Me., 207; *Topsham* v. *Lewiston*, 74 Me., 236.

The father himself was furnished support while Lawrence was yet under twenty-one years of age; to be exact, on May 21, 1917. The assistance was by Sullivan, at the expense of Mount Desert. There is, in the record, no further mention of supplies to him. A person once chargeable to the public for support, but no longer so, is not a pauper. *Wilson* v. *Brooks*, 14 Pick., 341.

The testimony of the father is corroborated in essential respects by that of his wife. Indeed, their testimony stands uncontradicted.

Thereby it is considered as proved that the elder Stanley acquired a settlement in Sullivan. From the time of the pauper supplies (May, 1917) until Lawrence was twenty-one (July, 1922), a period of slightly more than five successive years, he had his home in that town, and maintained himself continuously without having aid, directly or indirectly. R. S., Chap. 33, Sec. 1, Cl. VI.

The settlement of a father, within the State, determines that of his legitimate child. R. S., Chap. 33, Sec. 1, Cl. II. Lawrence H. Stanley's derivative settlement when he came to majority, was in Sullivan. *Fayette* v. *Chesterville*, 77 Me., 28; *Eagle Lake* v. *Fort Kent*, supra; *Ellsworth* v. *Bar Harbor*, 122 Me., 356, 120 A., 50; *Somerville* v. *Smithfield*, 126 Me., 511, 140 A., 195.

This settlement, the defense advances, was defeated by the acquisition of a new one. R. S., Chap. 33, Sec. 3. The situation of the pauper, in connection with his legal right to support, at the time of the supplies in suit, is asserted to have been in Gouldsboro. The burden of sustaining this proposition is on the defendant. *Monroe* v. *Hampden*, 95 Me., 111, 49 A., 604; *Ellsworth* v. *Waltham*, 125 Me., 214, 132 A., 423.

On marriage, in May, 1924, the younger Stanley took his bride to his father's house, where they lived until November. They then went to the wife's parents, in Gouldsboro. In February, 1925, following the birth of a child, they are back in Sullivan, living again in his parents' home. He has work, for a time, on a bridge. In May or June of that year (1925) the young Stanleys return to Gouldsboro, living in the two-room house of a Mr. Hunt. They had with them their dishes, cooking utensils, and bedding. What furniture they had was stored in Sullivan, the Hunt house having its own.

The substance of the positive testimony of the pauper is that he left Sullivan without intending to return there to live, and that he

chose Gouldsboro as his place of residence, with the object of making it his home. Certainly, he was physically present in Gouldsboro, and for the first time he had and kept his separate house. His testimony is explicit that he had no present existing intention of removing from the town. *Knox* v. *Montville*, 98 Me., 493, 57 A., 792; *Ellsworth* v. *Bar Harbor*, supra.

To now (May or June, 1925), he seems to have been perhaps transient or unsettled, but at this time, on the authority of his own testimony—which that of his wife, on the whole, goes to substantiate, his acts tend to confirm, and nothing in the record distinctly refutes—he definitely took up his residence in Gouldsboro.

"A person of age, having his home in a town for five successive years without receiving supplies as a pauper, directly or indirectly, has a settlement therein." R. S., Chap. 33, Sec. 1, Cl. VI.

The Stanleys had been living in the Hunt house but three months when, there being a prospect of getting work in Waltham, Massachusetts, they took their household effects to Mrs. Stanley's parents' house, in Gouldsboro, and themselves went to Waltham.

The wife came back to her mother's in April, 1926, the husband arriving one month later (May). He worked in Gouldsboro, on roads, that summer. In June, the mother's family went to Southwest Harbor, the Stanleys continuing in the parents' home—(to which the furniture had, up to then, been left in Sullivan, was brought)—until November, 1926.

Stanley now returned to Waltham, to work in the watch factory, his wife joining him early in 1927. She returned to Gouldsboro in May. He is there that summer "on his vacation"; then goes back to Waltham, where he stays until early September. Shortly after returning to Gouldsboro, he left for Southwest Harbor, and remained, with his family, with his wife's people (who, at that time, were staying there). In January, 1928, they all returned to Gouldsboro, the Stanleys going to her grandmother, who was ill. They were with her two months.

Immediately after that, they are living by themselves in the Randall camp, in Gouldsboro. Since 1928, Stanley has not been away from that town for any length of time, nor has his wife. She did go to Sullivan, in 1930, in an advanced stage of pregnancy, that she might be near her physician.

In order to constitute a settlement, there must be a combination of physical presence with the intention of remaining. The intention must be, not to make the place a home temporarily, but to make it a real home, for an indefinite period. The visible facts may be apparently consistent with either a temporary or a permanent home; each case must depend largely upon its own peculiar facts. *Sanders* v. *Getchell,* 76 Me., 158, 165. In the case at bar, the pauper testifies that he went to Gouldsboro in May or June of 1925—(help was on June 20, 1931)—with the intention of there establishing his home, which intention was carried into effect.

There is no reason to disbelieve this. Stanley did not thereafter spend every day of five successive years in Gouldsboro; absences were frequent; but, in every instance, so is the testimony, he departed simply and solely that he might work and earn money to support himself and his family, his always continuing purpose being to remain away only so long as he should have a job. The facts are not necessarily averse. That, (in the language of plaintiff's brief), Stanley pays no taxes to the town of Gouldsboro, is simply a matter to be weighed in the case. Taxation, while important, is not conclusive. *Monroe* v. *Hampden,* supra. Incidentally, nothing shows the assessment or payment of any tax, there or elsewhere. Nor is it of controlling moment that he might not have had, in Gouldsboro, a particular house to which he might return as a matter of right. *Warren* v. *Thomaston,* supra; *South Thomaston* v. *Friendship,* 95 Me., 201, 49 A., 1056. Counsel note that he whose pauperism is involved "did not express his intention to anyone of making Gouldsboro his home." On the issue of one's change of residence, relative to pauper settlement, his declarations, unaccompanied by any act material to the issue, would be incompetent. *Knox* v. *Montville,* supra. A mere expression of intent, unconnected with any relevant circumstances, would be too remote to be admissible as evidence. *Deer Isle* v. *Winterport,* 87 Me., 37, 32 A., 718. Also see *Holyoke* v. *Holyoke,* 110 Me., 469, 479, 87 A., 40, 46. As to voting, there is no evidence.

When a person moves from place to place, the question as to his settlement sometimes becomes difficult. It must be found, as a fact, from all the evidence, that within the contemplation of the pauper statutes, Lawrence H. Stanley's intention to make Gouldsboro

his home over the requisite period of time, was actual. *Solon* v. *Embden*, 71 Me., 418. More specifically, there must have been personal presence in that town, and also an intent to remain, continued for five consecutive years, without his receiving public aid, and without being absent during such five years with an intent not to return. *Ellsworth* v. *Bar Harbor*, supra.

The case is rather close. There may be room for reasonable minds to differ. However, after weighing and considering the transcript in all its phases and features, and balancing the probabilities, the conclusion of the Court is that the plaintiff is not entitled to recover.

This view of the controversy necessitates the entry, which the report authorizes, of

*Judgment for defendant.*