**AMERICAN COOLER CO., Inc., v. FAY & SCOTT.**

District Court, D. Maine, N. D.
Aug. 23, 1937.

Wm. R. Pattangall and Robt. B. Williamson, both of Augusta, Me., for plaintiff.

Crosby & Crosby, of Dexter, Me., and James M. Gillin, of Bangor, Me., for defendant.

PETERS, District Judge.

This case having been tried before a jury with a verdict for defendant comes before the court upon the motion of the plaintiff to set aside the verdict and for a new trial on the grounds that the verdict was against the law of the case and the weight of the evidence.

There is no special difference of opinion between counsel as to the rules of law governing the consideration and the decision of such a motion, nor could there well be in view of the fact that the law is well settled by many decisions in both the federal and state courts.

■ The verdict was arrived at after a careful trial, with able counsel participating, with no apparent errors and with instructions to the jury which were not excepted to. There is no reason to think that the jury failed to exercise a deliberate and unbiased judgment or that it was influenced by any prejudice, unless such can be inferred from the verdict alone. There was a direct and irreconcilable conflict of testimony. The jury, after apparently adequate instructions, including the rule as to burden of proof, adopted the view of the facts as testified to by the witnesses for the defendant. The court or another jury might take another view of the matter, but under our procedure that is not the question. It is not sufficient ground for a new trial that a verdict is merely against the preponderance of the testimony. It must be so manifestly and palpably against the evidence in the case as to compel the conclusion that the verdict is contrary to right and justice. Judge Lurton, in the case of Mt. Adams & E. P. Inclined R. Co. v. Lowery (C.C.A.) 74 F. 463, 465, 473, said:

"Where the evidence submitted to the jury is such as to render the issue doubtful, a new trial will not be granted, even though the verdict is against the apparent weight of the evidence. Brown v. Wilde, 12 Johns. [N.Y.] 455; Stryker v. Bergen, 15 Wend. [(N.Y.) 490], 491."

The following is from the opinion of the Court in Donohue v. Dykstra (D.C.) 247 F. 593, 594, referring to and following the Mt. Adams Case: "It is, of course, well settled that if there is any real conflict in the testimony, and there is any substantial evidence to support the verdict found, such verdict should not be set aside by the Court, even if the latter would have reached a different verdict from that of the jury on the same evidence."

The Supreme Judicial Court of Maine stated the rule as follows in Hewey v. Nourse, 54 Me. 256: "To justify the Court in setting the verdict aside, for the cause alleged in the motion, there must be such a manifest weight of evidence against the verdict, as to render it clear that the jury either misapprehended the evidence, or were guilty of gross misconduct."

■ Where there is a conflict of testimony, it is presumed that the jury gave the various items of testimony their real worth in marshaling the probabilities. A new trial will not be granted where to do so would amount to a substitution of the judgment of the court for that of the jury. Harmon v. Cumberland County P. & L. Company, 124 Me. 418, 130 A. 273; Inhabitants of Somerville v. Inhabitants of Smithfield, 126 Me. 511, 140 A. 195; Lawler v. Spellman, 118 Me. 484, 105 A. 715.

784

The Supreme Court in the case of Pleasants v. Fant, 22 Wall. 116, 122, 22 L.Ed. 780, in speaking of the duty of the court in its relation to the jury to protect parties from unjust verdicts arising from ignorance of the rules of law and of evidence, from impulse or passion or prejudice, or from any other violation of the lawful rights of the parties in the conduct of a trial, said:

"In the discharge of this duty it is the province of the court, either before or after the verdict, to decide whether the plaintiff has given evidence sufficient to support or justify a verdict in his favor. Not whether on all the evidence the preponderating weight is in his favor, that is the business of the jury, but conceding to all the evidence offered the greatest probative force which according to the law of evidence it is fairly entitled to, is it sufficient to justify a verdict? If it does not, then it is the duty of the court after a verdict to set it aside and grant a new trial."

There is no ground for a claim that the jury violated any instructions as to the law or that it was left in ignorance as to any rules of law pertinent to the case. If the jury had a right to accept the story of the defendant's witnesses as to the facts surrounding the contract in suit, the verdict could have been properly rendered for the defendant.

■ The general background of the case was this: The plaintiff, a New York corporation, was a broker or dealer in beer faucets, among other things; buying from manufacturers and selling to the trade. The defendant, a corporation doing business in Maine, ran a machine-shop business, usually dealing in heavier articles than faucets, for the manufacture of which its plant and facilities were not well adapted without the installation of additional equipment. Internally it was what might be called a one-man company, as Mr. Fay, the president, was and had been for years the sole active manager of all its affairs. His brother-in-law, Mr. Plouff, was vice president and active in the business, but in all matters of consequence subordinate to Mr. Fay.

Business being dull, and Mr. Fay in ill health, Mr. Plouff started out to get some work for the shop, and, without the knowledge of Mr. Fay, had their cost engineer, Greene, make figures on beer faucets, and with him went to New York,

met the officers of the plaintiff with whom Mr. Plouff had had correspondence in the name of his company, and gave them a figure of $1.08, each, for beer faucets such as plaintiff wanted to buy.

The plaintiff in New York gave Plouff a written order entitled, "Purchase order," for 25,000 faucets at that price. The order was dated December 22, 1936, directed to Fay & Scott, Dexter, Me., carried the printed words, "Please enter our order as follows," describing articles, price, and terms, and was signed by the treasurer of the plaintiff.

Plouff and Greene returned to Dexter, but as various holidays intervened, the transaction did not come to the attention of Mr. Fay until Monday, December 28th. On that day Plouff wrote in the name of Fay & Scott, by himself as vice president, a letter to the plaintiff as follows:

"American Cooler Co., 37 W. 19th St. New York, N. Y.

"Gentlemen: We received this day, a box of equipment for our examination and quotation; we will give this immediate attention.

"We are holding up the order for 25,000 #1201 chrome plated bear faucets, pending Credit investigation. This may take a few days. This is not interfering in any way with the progress towards producing these faucets.

"Very truly yours,
"Fay & Scott
"P. S. Plouff."

"PSP L

The first paragraph of the letter referred to another matter.

In replying, on January 5, the plaintiff wrote the following letter to defendant:

"Fay & Scott, Dexter, Maine

"Gentlemen: We have your letter of December 28th in which you advise us that you are holding up our order pending credit investigation. No doubt it has now been taken care of and should you require more references, please do not hesitate to call on us.

"We are this day mailing to you, our #1835 Peerless Tap on which we also want you to quote us.

"We are anticipating your first shipment to us on January 15th as promised, and as soon as we receive the quotations on the other samples sent you, should the quotations be satisfactory, the writer will

arrange to call on you at Dexter to place the specifications for this material.

"Very truly yours,
"American Cooler Co., Inc.
"A. Hedeman, President"

Upon receipt of the above letter, on January 7, a letter was compiled by Fay and Plouff together and sent to the plaintiff as follows:

"American Cooler Co., Inc., 37 W. 19th St., New York, N. Y.

"Gentlemen—Attention A. Hedeman, Pres.

"Since soliciting your business and receiving your order for beer faucets, conditions in our line as machinery manufacturers have changed to the extent that it would seem inadvisable for us to take on the manufacture of a more or less specialized line which yours represents.

"We have been a little tardy, we have to admit, in reaching this decision, and we certainly hope it is not going to inconvenience you, to accept the return of this order which we are enclosing.

"We want to say that our decision has not been influenced by any Credit reports received, as these have been very satisfactory.

"We hope to contact you again, as it is possible sometime in the future you may have something more in our line of work, which you may wish to develop that will enable us to get together.

"Yours very truly,
"Fay & Scott
"P. S. Plouff V. P."

After some further correspondence in which the plaintiff insisted upon the fulfilling of the contract which it claimed was completed in New York and in which the defendant denied that claim and said it could not enter into the manufacture of that line of goods at that time, this suit followed with the verdict for defendant as stated.

The controversy comes over the conversation in New York, which the officers of the plaintiff had with the representatives of the defendant at the time the written order was signed by the treasurer of the plaintiff and given to the vice president of the defendant, Plouff and Greene for the defendant, claiming and testifying that the order was taken subject to approval and acceptance by Mr. Fay, the manager of the business. On this theory the defendant claimed that the letter of January 7 returning the order was merely the exercise of the right of disapproval which was reserved in New York by Plouff and Greene.

The plaintiff claims, and its president and treasurer testified, that there was nothing said about approval or the necessity of any action by Mr. Fay, but that Plouff as vice president unconditionally accepted the purchase order in New York, thus making it a complete, binding contract on both parties.

The jury could well have found that Plouff as vice president had apparent authority to bind his company. I am not discussing the question of authority to make a contract, which is not necessarily involved.

If the plaintiff is right in its theory of the contract, it should have the opportunity to recover damages, because, if there was a contract, there was a clear breach. On the other hand, if the order was taken conditionally upon the approval by Fay, there could be no recovery because the order was not approved by him but rejected.

No question of estoppel or implied acceptance by letter is raised. The clearcut question put to the jury to settle was whether the order was accepted in New York as a completed contract, or whether it was accepted conditionally upon approval by Fay.

If there were nothing in the case but two witnesses for plaintiff, saying one thing, and two for the defendant, saying exactly the contrary, a jury verdict in favor of either party would be obviously and admittedly final, especially so if in favor of the defendant when the plaintiff, as here, has the burden of proof.

Various circumstances are relied upon by the plaintiff, however, to support the story of its officers that Plouff agreed in New York unconditionally to fill the order: Among others, that the plaintiff, as its officers say, made contracts to sell to other persons the faucets in question, relying upon the contract price; but especially it is urged that the correspondence above given conclusively negatives the claim of the defendant that it had not closed the contract in New York.

The letter of December 28 from defendant to plaintiff in which defendant says it is holding up the order pending credit investigation, but that "this is not interfering in any way with the progress

towards producing these faucets," which language Mr. Fay, on cross-examination, admitted was open to the fair conclusion "that the order had been accepted and the work was going along," is pointed to as wholly inconsistent with the oral testimony of the defendant's witnesses and its present position.

But there may be a difference of opinion as to whether the words "progress towards producing these faucets," would necessarily be taken to mean that the work of construction was actually going on. It may be fairly argued that the wording is not clear, frank, or without ambiguity, but the argument is directed to the point that the letter showed an acceptance in New York, not an approval in Dexter. The case of the plaintiff is based on acceptance in New York. The jury might have taken the view that the plaintiff could not have understood that the work was going on, because between the date when Plouff was in New York and Monday the 28th, after taking out the necessary time for the trip home, and Christmas, part of Saturday and Sunday, there had been hardly time to actually begin any such work.

The statement in the letter that defendant was holding up the order pending credit investigation is not inconsistent with its claim that the order could be rejected at its discretion. Such a course would be in accord with ordinary business prudence in taking an order subject to approval by the factory.

It would be natural and to be expected that, instead of making excuses for not filling the order, the defendant should say that Mr. Fay did not approve it and therefore it was returned. But he was not strictly obliged to call attention to his right of disapproval when at that time the question had not been raised.

The language in the letters furnishes an argument, and perhaps a strong one, from one point of view, for accepting the story of the plaintiff; but I cannot say that it is conclusive or that the jury should not judge of its weight.

The letters were the subject of much comment and argument at the trial and the jury was expressly instructed to consider them carefully in connection with the verbal testimony. It is clear that they were not regarded as sufficient to overcome the burden of proof resting upon the plaintiff. The story of the defend-

ant's witnesses simply was accepted as against that of the plaintiff's in spite of the evidence of the letters and the surrounding circumstances.

The case is in the category of those numerous cases where there is a direct conflict of testimony such as to render the issue doubtful, and the decision of the jury, while, as other impartial persons might think, against the apparent weight of the evidence, still has substantial evidence to support it and therefore cannot be properly set aside by the court.

The motion for a new trial is denied.