People of State of Illinois ex rel. Fay Barnes Powell, Appellee, v. Board of Education of City of Chicago, Herold C. Hunt, Alfred H. Clarke and Paul G. Edwards, as Members of Board of Examiners of Board of Education of City of Chicago, Appellants.

## Gen. No. 45,341.

Opinion filed May 28, 1951. Additional opinion filed June 13, 1951. Rehearing denied June 13, 1951. Released for publication June 14, 1951.

FRANK R. SCHNEBERGER, of Chicago, for appellants; FRANK S. RIGHEIMER, JAMES W. COFFEY, and JOHN T. MEHIGAN, all of Chicago, of counsel.

RUGEN, LIGTENBERG & GOEBEL, of Chicago, for appellee; JOHN LIGTENBERG, of Chicago, of counsel.

MR. PRESIDING JUSTICE SCHWARTZ delivered the opinion of the court.

This is an appeal from an order granting a writ of mandamus restoring plaintiff to active service as a teacher in the Chicago Public Schools. The Teachers' Compulsory Retirement Act, applicable to Chicago (secs. 34–89, 34–90, ch. 122, Ill. Rev. Stat. 1949) [Jones Ill. Stats. Ann. 123.1450, 123.1451], provides for the retirement of teachers when they have attained the age of 65 years and the payment to them of retirement pay of $500 per year in addition to their regular pension. It further provides that a teacher "may continue in active service until the end of the school term during which he attains such age." Pursuant to the provisions of this Act, plaintiff was retired by the Board of Education at the end of the first school semester, January 27, 1950. She contends, first, that the words "school term" do not mean "semester" but mean the "school year," which did not end until June 23, 1950 and, second, that she attained the age of 65 on January 30, 1950, being the first day of the second semester.

██ The school year in the City of Chicago has always been divided into two semesters. The rules of the Board enacted pursuant to statutory authority so provide. This means that each semester represents a period of instruction; that at the beginning of each semester there is a new general registration and enrollment, pupils receive their marks and are graduated, and all other arrangements made as if at the beginning of a school year. In Webster's Collegiate Dictionary, Third Edition, a small dictionary but in popular use among students and teachers, a semester is defined as "either of the two *terms* into which the yearly period of instruction is divided in many colleges, universities, etc." (Italics ours.) In the larger Webster's New International Dictionary, Second Edition, 1947, page 2273, a semester is defined as "either of the two periods of instruction, commonly 18 weeks in length, into which the academic year is usually di-

vided." The word term is defined in the educational sense in the same dictionary as "a definite continuous period during which instruction is regularly given to students; as, a school year of three terms . . . ." It cannot be doubted that in common acceptation a semester is a school term. Plaintiff argues that the commonly accepted use is not to be adopted; that in legislation relating to school districts *having less than 500,000 inhabitants,* which would, of course, exclude the City of Chicago, school term is defined for the purpose of that Article as that portion of the school year, July 1 to June 30, when school is in actual session. There is no reason why the word "term" could not for the purpose of a legislative act, a contract, lease, or any document be defined as embracing one, two, or three school years, or any other period of time. In its broadest sense, "term" could include any duration of time. Its definition in one legislative act has little or no value in determining its meaning in another.

■■ If there is doubt about the correct interpretation, however, we can resort to two well established rules for determining legislative intent. The first of these is that courts may and should consider the objects to be attained by the legislation or the evils to be remedied. *Fowler v. Johnston City & Big Muddy Coal & Mining Co.,* 292 Ill. 440, 445; *City of Chicago v. Green,* 238 Ill. 258; *Kehl v. Taylor,* 275 Ill. 346; *People v. Abbott,* 274 Ill. 380; *Stribling v. Prettyman,* 57 Ill. 371. In this case the object of the particular clause in question is clear. It was recognized that a forced retirement of teachers in the middle of a school term would disturb the smooth operation of the school system. Hence, the purpose was to provide for retirement at a date when there would be no inconvenience to the system, that is, at the expiration of or between periods of instruction. In Chicago that means semesters.

 The second rule of construction applicable here is that of contemporaneous construction. *Nye v. Foreman,* 215 Ill. 285, 288; *People ex rel. City of Chicago v. Schreiber,* 322 Ill. App. 452; *People v. Rosehill Cemetery Co.,* 371 Ill. 510, 514; *Village of Broadview v. Toman,* 309 Ill. App. 485, 500; *Chicago Title & Trust Co. v. Central Republic Trust Co.,* 299 Ill. App. 483. Pursuant to the provisions of the first Retirement Act which was in effect between 1926 and 1935, teachers in Chicago were retired twice annually, on February 1 and August 1 of each year, dates which in a general way correspond to semesters. What happened between 1935 and 1943 does not clearly appear from the record. The Act of 1935 eliminated the requirement that retirements should take place on given dates. Plaintiff states in her brief (p. 15) that it may be the School Board continued to make such retirements effective on February 1st and August 1st, or as a matter of convenience, at the end of the first and second semesters, and if so, plaintiff says that was within their discretion and did not flow from any legal requirement. In 1943 the Act was again amended to include the phraseology under consideration here, and since that date the Board of Education has construed the Act as providing for retirement at the end of each semester. Considering the large number of school teachers in Chicago (15,000 we understand are presently employed) the number of individuals who have been affected by this administrative practice may well run into many hundreds, if not thousands. Plaintiff argues, however, that six and one-half years is not sufficient time to support a contemporaneous construction; that other statutes which have been construed for much longer periods have been interpreted otherwise when they have reached the courts. Each case of this sort must rest on its own merits In this case what plaintiff claims as a right

may be to another a burden. It would not be difficult to conceive of litigation in which a teacher sought to enforce a right to retire at the end of a semester. What we have before us, therefore, is a rule of administrative practice rather than one determining rights and obligations. In such a case the rule of contemporaneous construction should be given great weight. We are of the opinion that the Board properly construed the law.

■ Plaintiff contends that she did not attain the age of 65 on January 29, 1950 but that her 65th birthday occurred on January 30. Plaintiff admits that the law is well established that a person attains a given age on the day prior to his birthday anniversary, but argues that this was an interpretation of the law made only for the purpose of preserving the rights of parties involved, not to destroy them. As we have stated, what is here involved is an administrative rule. Whatever may have been the historical origin of this method of determining age, it has become *stare decisis* now and is applied to all manner of situations. *Scott v. Scott,* 304 Ill. 267, 270, citing 14 R. C. L. 218; 22 Cyc. 512; 5 A. L. R. 2d, sec. 3, p. 1147; *Gouldsboro v. Sullivan,* 132 Maine 342, 170 Atl. 900; *Bardwell v. Purrington,* 107 Mass. 419; *Wells v. Wells,* 6 Ind. 447, 448.

■ We are therefore of the opinion that plaintiff is not entitled to a writ of mandamus. The essential facts are clear and do not appear to be in dispute, but the pleadings are such that we cannot reverse without remanding as the case comes to us on an order which sustained a motion to strike defendants' reply to plaintiff's reply and awarded the writ. So far as we can see, no new issues were raised and isolated by this anachronism in pleading.

The order awarding the writ of mandamus is reversed and the cause remanded with directions to overrule plaintiff's motion to strike and to take such

further proceedings as are consistent with the views herein expressed.

*Judgment order reversed and cause remanded with directions.*

FRIEND and SCANLAN, JJ., concur.

### ADDITIONAL OPINION OF THE COURT

No new matter which the court has not already considered is presented in the petition for rehearing filed by appellee. We file this solely for the purpose of explaining why we cannot comply with appellee's suggestion that we reverse the cause without remanding. The court's order sustained a motion to strike defendants' reply (rejoinder) to plaintiff's reply. The reversal of that order does not mean that the averments of defendants' reply are admitted. The case is not therefore at issue and cannot be concluded until it is. It seemed to us that the questions raised were matters of public record or patently known which should not have become involved in complicated pleading. As this was not done, we must reverse the judgment and remand the cause.

*Petition for rehearing denied.*

FRIEND, J., concurs.